## Richmond.

### JOHN H. LLOYD v. HOWARD W. SMITH AND OTHERS.

March 22, 1928.

Absent, Burks, J.

1. FRAUDS, STATUTE OF—*Parol Contract for the Conveyance of Land.*—An action for damages cannot be sustained for the breach of a parol contract for the conveyance of land, because of the bar of the statute of frauds.

2. FRAUD AND DECEIT—*Courts Alert to Discern Fraud.*—Courts, as they should be, are always alert to discern fraud, and when discovered to afford proper relief against if.

3. FRAUD AND DECEIT—*Misrepresentation of Present Pre-Existing Facts—Promises as to Future Events.*—As a general rule, an action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events.

4. FRAUD AND DECEIT—*Misrepresentation of Present Pre-Existing Facts—Promises as to Future Events—Present Intention Not to Perform.*—There is much authority to the effect that an action in tort for deceit and fraud may sometimes be predicated on promises which are made with a present intention not to perform them, or on promises made without any intention to perform them. Thus, where a promisor expressly or impliedly avers that he has an existing intention to fulfill his promise, that intention is a fact, and if false and fraudulent is a fraudulent representation which may or may not supply the basis for an action in tort for the deceit.

5. FRAUD AND DECEIT—*Definition of Fraud—Futility of Attempt to Give a Definition of Fraud.*—It would be rash to attempt to give a perfect definition of fraud. The only safe way seems to be to define, or rather describe, the fraud suspected to exist in any given case, by comparison with similar cases selected from the reports.

6. FRAUD AND DECEIT—*Definition.—Refusal to Perform a Promise.*—Fraud is unfair dealing. When, through inducements held out by one person, even only by means of a promise, by which another person is influenced to change his position so that he cannot be placed *in statu quo*, and will be seriously damaged unless the promise is fulfilled, then the refusal to perform is fraud.

7. FRAUD AND DECEIT—*Definition.*—Any transaction that outrages our sense of justice or shocks the conscience of an honest man may well be viewed with suspicion, and scrutinized closely.

8. FRAUD AND DECEIT—*Promise which Promisor Does Not Intend to Fulfil as a Misrepresentation of a Material Fact.*—Fraud may sometimes be predicated upon the failure to perform a promise where the promise is the device to accomplish the fraud. When a promise is made with an intention not to perform it, the promisor is guilty of a misrepresentation—a misstatement of a material fact.

9. FRAUD AND DECEIT—*Promise to Finance Repurchase of Property—Promise which Promisor Does Not Intend to Fulfil as a Misrepresentation of a Material Fact—Diligence and Readiness to Perform and Resulting Damages—Case at Bar.*—In the instant case plaintiff alleged that defendants induced him to allow his debt secured by a deed of trust to become in default, by promises which they never intended to fulfil of financing the repurchase of the property after its sale under the deed of trust, and that at the sale defendants purchased the property for their own benefit.

*Held:* That an action for such deceitful and fraudulent promises as were alleged in the instant case might be maintained, but only where there are supporting allegations of diligence and readiness on the part of the plaintiff and refusal to perform by the defendants and the resulting damages.

10. FRAUD AND DECEIT—*Action for Fraud—Promptness and Diligence.*—In all cases of fraud, either at law or in equity, the rule requiring promptness and diligence applies.

11. FRAUD AND DECEIT—*Disaffirmance of Contract where Fraud is Alleged.*—Prompt disaffirmance of a contract where fraud is alleged is required of the deceived party upon a discovery of the fraud. The person who has been misled is required, as soon as he learns the truth, with all reasonable diligence, to disaffirm the contract, or abandon the transaction, and give the other party an opportunity of rescinding it, and of restoring both of them to their original position. He is not allowed to receive the possible benefits from the transaction and then claim to be relieved from its obligations.

12. FRAUD AND DECEIT—*Disaffirmance of Contract where Fraud is Alleged—Promise to Reconvey—Case at Bar.*—In the instant case plaintiff alleged that defendants induced him to allow his debt secured by a deed of trust to become in default, by promises which they never intended to fulfil of financing the repurchase of the property by plaintiff within thirty days after the sale, at which defendants became the purchasers. If the fraud alleged was in fact perpetuated, plaintiff must have known of it within thirty days from the date of the sale, whereas, the action in the instant case was not instituted until nearly two and a half years thereafter. This delay was unexplained in plaintiff's notice of motion, and is inexplicable except on the theory that plaintiff was either unable or unwilling to exercise his option to repurchase the property.

*Held:* That plaintiff had not acted with sufficient promptness upon his discovery of the alleged fraud to entitle him to recover.

13. FRAUD AND DECEIT—*Actions—Readiness, Ability and Willingness to Perform on the Part of the Plaintiff.*—It is vital, not only in actions on contract, but also in an action for deceit and fraud growing out of a repudiated contract, that the party complaining shall be ready, willing and able to perform his part of the agreement.

14. FRAUD AND DECEIT—*Actions—Readiness, Ability and Willingness to Perform on the Part of Plaintiff—Promise to Reconvey—Case at Bar.*—In the instant case plaintiff alleged that defendants induced him to allow his debt secured by a deed of trust to become in default, by promises which they never intended to fulfil of financing the repurchase of the property after its sale under the deed of trust, and that at the sale defendants purchased the property for their own benefit. The fraud, if any, was the failure of defendants to reconvey to plaintiff, but it appeared from the pleadings that before the plaintiff had a right to demand a reconveyance of the property, he had to pay one of the defendants $2,800.00 for his services, and also within thirty days from the date of the sale to refund the purchase price of the property as conditions precedent to its reconveyance to him.

*Held:* That although plaintiff might not have been bound to make an actual tender to defendants, an allegation of his readiness, ability and willingness to perform the contract on his part was necessary to the maintenance of his action.

15. FRAUD AND DECEIT—*Actions—Bare Allegation of Fraud—Resulting Damage.*—It is fundamental that bare allegations of fraud will not of themselves support an action for damages—the facts showing the fraud and the resulting damage must be alleged.

16. FRAUD AND DECEIT—*Actions—Presumption of Fraud or Damage.*—Neither fraud nor damage can be presumed, and the allegation of a mere purpose to commit fraud cannot be made the basis of an action. The purpose must be consummated, the injury inflicted.

17. FRAUD AND DECEIT—*Actions—Presumption of Fraud or Damage—Case at Bar.*—In the instant case the fraud, if any, was the failure of defendants to reconvey property of plaintiff's purchased by defendants at a foreclosure sale under a deed of trust. Plaintiff alleged that defendants induced him by promises which they never intended to fulfil to allow the debt secured by the deed of trust to become in default. From plaintiff's notice of motion it appeared that plaintiff was bound to pay one of the defendants a certain sum for his services and to refund the purchase price of the property. These were conditions precedent to the reconveyance. Unless plaintiff was ready to pay the sum admitted to be required of him to entitle a reconveyance, he suffered no damage. It could not be presumed that defendants would have refused to reconvey if plaintiff had performed his part of the contract.

*Held:* That notice of motion was fatally defective because of the absence either of any allegation of readiness and ability to perform on the part of the plaintiff, or of any demand for the reconveyance or of any refusal or inability on the part of the defendants to perform their promise.

18. Fraud and Deceit—*Ground of the Action—Fraud and Damage.*—The ground of the action of deceit is fraud and damage, and when both concur the action will lie. Moreover, both must concur to constitute actionable fraud, a common statement of the rule being that neither fraud without damage, nor damage without fraud, is sufficient to support an action. To justify relief for fraud, either at law or in equity, the party asking for it must have been damaged or misled to his own hurt.

19. Fraud and Deceit—*Misrepresentations—Materiality.*—A party complaining of fraudulent misrepresentation must suffer some pecuniary loss or injury as the natural consequence of the conduct induced by the misrepresentation. In short, the representation must be so material that its falsity renders it unconscientious in the person making it to enforce the agreement or other transaction which it has caused. Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal.

20. Fraud and Deceit—*Promise of Defendants to Reconvey Property to Plaintiff—Case at Bar.*—The instant case was an action for fraud. The fraud, if any, was the failure of defendants to reconvey to plaintiff property of plaintiff's purchased by defendants at a foreclosure sale. While plaintiff had the option to redeem the property, he was under no obligation to do so and the action in the instant case could not be maintained by merely alleging that the parties defendant made the contract with the fraudulent intent not to perform and fraudulently failed to perform, in the absence of any allegation that the plaintiff ever even asked them to perform, ever desired them to perform, or could have complied with his own agreement to supply the consideration had the defendants tendered him a reconveyance of the property.

21. Fraud and Deceit—*Promise of Defendants to Reconvey Property to Plaintiff—Case at Bar.*—The instant case was an action for deceit. Plaintiff alleged that defendants, S. and W., acting as his attorneys, induced him to permit his debt secured by a deed of trust to become in default, in order to clear up certain litigation by the foreclosure; that S. and W. orally agreed to finance the repurchase of the property and secured one C. to purchase the property at the sale, with the understanding that plaintiff should have thirty days from the date of the sale in which to re-finance the purchase of the property, and that defendant C. was to receive the sum of $2,800.00, for his services; that C. bid in the property at the sale, and before the expiration

of the thirty days the defendants conveyed the property in fee simple to C., who conveyed it to another who had notice of the facts, who afterwards conveyed it to a corporation in which defendants were interested as stockholders. Plaintiff asserted that his right to recover was based, not upon the contract to reconvey, but, reciting and affirming the contract as the basis for the action, alleged deceit and fraud in its inception as the ground for recovery, *i. e.*, that the promises made plaintiff by defendants were made by defendants with intent to deceive and defraud and with the intent and purpose on their part not to perform their promises.

*Held:* That plaintiff's notice was demurrable because it did not allege that plaintiff was ready, able and willing to finance the repurchase of the property within thirty days from the sale, and ready, able and willing to pay the $2,800.00 that he was under obligation to pay C.

Error to a judgment of the Circuit Court of the city of Alexandria, in a proceeding by motion for a judgment for money. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*A. D. Smith, H. S. Rucker, H. W. Dudley,* and *Hedrick & Pumphrey,* for the plaintiff in error.

*M. Carter Hall* and *Gardner L. Boothe,* for the defendants in error.

PRENTIS, P., delivered the opinion of the court.

This is a case in which the trial court has sustained a demurrer to the notice of motion, and, the plaintiff failing or declining to amend, has entered final judgment for the defendants. This ruling presents the only question here for review.

The original notice of motion contains these allegations, substantially: That Howard W. Smith and

William P. Woolls, on May 1, 1924, were acting as
attorneys for the plaintiff in certain litigation pending
in the Circuit Court of the city of Alexandria, and
advised him to permit his debt secured by a deed of
trust on certain real estate to become in default, in
order to clear up the said litigation by foreclosure;
that the defendants, Smith and Woolls, agreed (orally)
to finance the purchase of the property, and thereupon
secured the defendant, Carlin, to purchase the prop-
erty with the understanding that plaintiff should have
thirty days from the date of sale to make settlement,
for which plaintiff agreed to pay Carlin $2,800.00; that
at the time of the sale there was an additional agree-
ment to allow the plaintiff thirty days to finance the
repurchase, whereupon Carlin would convey or cause
the property to be conveyed to Lloyd; that Smith and
Woolls agreed to lend Lloyd $30,000.00, and on May
14, Smith, Woolls and Carlin, with intent to defraud
the plaintiff, undertook to convey it to Carlin, in
violation of the agreement; that on May 15 Carlin, at
the request of Smith and Woolls, fraudulently conveyed
to Massie, and subsequently, on July 1 and August 13,
1924, respectively, all of the defendants caused Massie
to convey it to two corporations, for the aggregate
consideration of $40,500.00; that the property was
worth $200,000.00; that Smith, Woolls and Massie are
large stockholders in both corporations; and that plain-
tiff's damage was caused by the defendants' violation
of their contract with the plaintiff, and by their fraud
and collusion.

[1] The defendants filed a demurrer, and plaintiff
asked leave to amend his notice of motion, which was
granted. Presumably, the plaintiff realized that this
demurrer to the original notice would have been sus-
tained upon the ground that he could not maintain

such an action for damages for the breach of such a parol contract for the conveyance of land, because of the bar of the statute of frauds.

He then filed an amended notice. The purpose of this amended notice is to avoid the bar of the statute of frauds, and the right to recover asserted therein is based, not upon the contract, but, reciting and affirming the contract as the basis for the action, alleges deceit and fraud in its inception as the ground for recovery.

The amended notice prays for a judgment for $200,000.00 and contains these allegations: "That on the first day of May, 1924, and for a long time prior thereto, the plaintiff herein was the owner of a tract of land within the corporate limits of the city of Alexandria, Virginia, known as Temple Park, containing eleven acres, more or less, and was also the owner of a one-half interest in a corporation known as the Rosemont Park Company, said corporation being the owner of a tract of land within the corporate limits of the said city of Alexandria, Virginia, containing twenty-eight acres, more or less, and known as Rosemont Park; both of said tracts of land being subject to an indebtedness of about $25,265.50, said indebtedness was evidence by certain promissory notes secured by a deed of trust conveying said tracts of land to the defendant, Howard W. Smith, as trustee. That in addition to this, the plaintiff owed fifty-eight promissory notes for the sum of five hundred ($500.00) dollars each, payable in three years, in the total sum of twenty-nine thousand ($29,000.00) dollars, bearing interest at the rate of six per cent per annum until paid, secured by a deed of trust conveying the undivided one-half interest in the said Rosemont Park to the said Howard W. Smith, as trustee.

"That the said plaintiff on the day and year last aforesaid and prior and subsequent thereto, had employed the said defendants, Howard W. Smith and W. P. Woolls, in their professional capacity as attorneys at law, to represent and act for and on behalf of the said plaintiff in certain matters and negotiations pertaining to the aforesaid two tracts of land.

"That the said Howard W. Smith and W. P. Woolls on, towit, on or about the first day of April, 1924, while still purporting to be acting as such attorneys, for and on behalf of the said plaintiff, in the aforesaid matters, advised the plaintiff to allow the payments on the notes, secured by the first deed of trust on said two tracts of land, to become in default for the purpose of having said property sold and thereby clearing up certain litigation which, as he was advised by the said attorneys, affected the title to the said property; that the said Howard W. Smith and W. P. Woolls, then and there, well knowing that they did not intend to finance for the plaintiff the purchase of said property when it should be sold under the first deed of trust that was on the two tracts of land as aforesaid, but the said Howard W. Smith and W. P. Woolls contriving and fraudulently intending, craftily and subtly to deceive and injure the said plaintiff, and with the intent that the said plaintiff should rely upon the said Howard W. Smith and W. P. Woolls, and to induce said plaintiff to refrain from making other arrangements to finance the purchase of said property, on the day and year last aforesaid, fraudulently and deceitfully informed said plaintiff and agreed with said plaintiff, that they were in a position to finance and that they would finance for the plaintiff the purchase of the said property when the said property was sold under the aforesaid first deed of trust.

"That the plaintiff acting upon the aforesaid advice, and relying upon the aforesaid statements of the said Howard W. Smith and W. P. Woolls, that they would finance for the plaintiff the purchase of the said property as aforesaid, permitted the payments under the aforesaid first deed of trust to become in default, and that thereafter, in the month of April, 1924, the said property was advertised for sale under the aforesaid deed of trust by the said Howard W. Smith, trustee, in said deed of trust, said sale to take place on the 3rd day of May 1924.

"That thereafter, to-wit, on or about the 1st day of May, 1924, the said Howard W. Smith and W. P. Woolls, in furtherance of their scheme to defraud and deceive the plaintiff, informed the plaintiff that they would not finance for the plaintiff the purchase of the said property, and that the said Howard W. Smith and W. P. Woolls, then and there, secured the defendant, Chas. C. Carlin, to purchase the said property at said trustee's sale for and on behalf of and for the use and benefit of the said plaintiff. The said Howard W. Smith, W. P. Woolls and Chas. C. Carlin representing to the plaintiff that he the said plaintiff should have thirty days from the date of the said sale of the·said property, in which to re-finance the purchase of the said property and make settlement with the said Howard W. Smith, trustee, for the purchase price of the said property, the said Chas. C. Carlin to receive from the said plaintiff the sum of $2,800.00 for his services, which said sum the plaintiff agreed to pay, and upon the payment of the purchase price for said property, it was to have been conveyed to said plaintiff by the said Howard W. Smith, trustee. All of which statements, representations and agreements were then and there made by the said Howard W.

Smith, W. P. Woolls and Chas. C. Carlin to induce the said plaintiff to act thereon, and to induce the said plaintiff to refrain from making other arrangements for the purchase of the said property. The said Howard W. Smith, W. P. Woolls and Chas. C. Carlin, then and there well knowing the premises, and then and there well knowing that they did not intend to give said plaintiff thirty days within which to finance the purchase of the said property, nor did they intend that the said property should at any time be conveyed to the plaintiff, but the said Howard W. Smith, W. P. Woolls and Chas. C. Carlin, then and there fraudulently, and intending, craftily and subtly, to deceive and injure the said plaintiff, in this behalf, on the 3rd day of May, 1924, caused the said Chas. C. Carlin to attend the sale of the property in the city of Alexandria, Virginia, and the said Chas. C. Carlin, then and there did bid in and purchase both of said tracts of land for the sum of twenty-seven thousand two hundred ($27,-200.00) dollars, that the said Howard W. Smith, W. P. Woolls and Chas. C. Carlin, on, to-wit, the 14th day of May, 1924, and without notice to the plaintiff and long before the expiration of the thirty days from the date of the said sale, caused to be conveyed the fee simple title to the said property to the said Chas. C. Carlin for the sum of $27,200.00.

"That on, to-wit, the 15th day of May, 1924, the said defendant, Chas. C. Carlin, at the instance and request of the said defendants, Howard W. Smith and W. P. Woolls, and with the intent to defraud the plaintiff of his right, title and interest in said property, did cause the said property to be conveyed to the said defendant, John A. Massie; that the said John A. Massie well knowing the premises, and well knowing the fraud that has been imposed upon the plaintiff as

set out herein, and with intent to defraud said plaintiff, and in furtherance of the scheme to defraud the plaintiff, at the instance and request of the said defendants Howard W. Smith, W. P. Woolls and Chas. C. Carlin, caused the said John A. Massie to convey, on the 1st day of July, 1924, the tract of land known as Temple Park, to the Temple Park, Incorporated, for the sum of $22,500.00 and with like fraudulent intent on the part of the said defendants, Howard W. Smith, W. P. Woolls, Chas. C. Carlin and John A. Massie, and pursuant to said scheme to defraud the plaintiff, they caused the said John A. Massie to convey to the Rosemont Improvement Company, Incorporated, the tract of land known as Rosemont Park for the sum of $18,-000.00; that the said two tracts of land were at the time aforesaid really worth two hundred thousand dollars.

"The plaintiff further alleges that on the 8th day of July, 1924, a certificate of incorporation was filed with and recorded in the office of the Secretary of the Commonwealth of Virginia, creating the aforesaid corporation, known as Temple Park, Incorporated, which as appears herein is seven days subsequent to the date of the deed from John A. Massie, conveying title to the tract of land known as Temple Park to the said corporation.

"The plaintiff further says that on the 13th day of August, 1924, a certificate of incorporation was filed with and recorded in the office of the Secretary of the Commonwealth of Virginia, creating the aforesaid corporation known as Rosemont Improvement Company, Incorporated, which was the same day the said John A. Massie conveyed to the said corporation the tract of land hereinabove referred to as Rosemont Park.

"And the plaintiff further charges that the said de-
fendants, Howard W. Smith, W. P. Woolls, Chas. C.
Carlin and John A. Massie, are large stockholders in
both of said corporations, and are today reaping the
benefit as such stockholders from the development and
sale of the aforesaid tracts of land.

"By means and in consequence of which representa-
tions and affirmations as set out in this notice of motion,
and as made by the said defendants to the plaintiff
as aforesaid, the said plaintiff not knowing to the
contrary, but believing that the defendants, Howard
W. Smith, W. P. Woolls and Chas. C. Carlin, were
acting in good faith at the time the said representa-
tions and affirmations were made to the plaintiff, as
set out herein, and the plaintiff acting in reliance upon
said representations and affirmations, and as a direct
result thereof the said plaintiff was damaged to the
extent of two hundred thousand ($200,000.00) dollars."

To this notice defendants filed a general demurrer,
specifying these grounds:

"1. That the said notice of motion is based on an
alleged parol contract for the purchase of land upon
which no action can be brought under section 5561
of the Code of Virginia.

"2. That the said notice of motion does not allege
that plaintiff ever performed his undertaking as set
forth in said motion, or tendered payment of the pur-
chase price of said property within thirty days of said
sale.

"3. Because said notice of motion does not allege
that the plaintiff ever tendered to the defendant, C. C.
Carlin, for services, as set forth in said notice, the sum
of $2,800.00, or any other sum.

"4. Because said notice of motion does not allege
that said Lloyd was in a position to, and offered to, and

was ready and willing to finance the purchase of said property within thirty days from the date of said sale.

"5. That said notice of motion does not allege that said Lloyd by reason of said alleged statements and representations by the defendants, Howard W. Smith and William P. Woolls, was prior to the sale of said property induced to refrain from making other arrangements to finance the purchase of said property.

"6. That said notice of motion does not allege that the plaintiff ever paid or offered to pay to the said defendants, or to any or either of them, any consideration for the performance of the alleged statements, representations and/or agreements, or any part thereof.

"7. Because the said notice of motion does not state any cause of action against the said defendants or either or any of them.

"8. Because said notice of motion does not allege in what way plaintiff acted in reliance upon the alleged representations and affirmation set forth in said notice of motion."

[2] Courts, as they should be, are always alert to discern fraud, and when discovered, to afford proper relief against it.

The rule of law relied upon in the amended notice is elaborately discussed in note to *Palmetto Bank & Trust Co.* v. *Grimsley* (134 S. C. 493, 133 S. E. 437), found in 51 A. L. R. 46.

The amended notice, then, which is based upon allegations of deceit and fraud, states substantially the same facts as were stated in the original notice, but alleges that the promises and agreements which were made to the plaintiff by the defendants as inducements to him to rely thereon were made by the defendants with intent to deceive and defraud, and with the intent and purpose on their part not to perform their promises.

[3] The purpose of the plaintiff is to rely upon a qualification of the general rule of law, that an action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud. To permit an action for damages in favor of one who has no other ground for complaint, except an unfulfilled promise (in this case to reconvey land), that is upon a broken contract, would ignore essential elementary distinctions, and in effect nullify the statute of frauds.

[4] There are, however, some real and apparent exceptions. The courts are not agreed as to all of these exceptions, but there is much authority to the effect that an action in tort for deceit and fraud may sometimes be predicated on promises which are made with a present intention not to perform them, or on promises made without any intention to perform them. It has been stated that the gist of fraud in such case is not the breach of the agreement to perform, but the fraudulent intent. In the perhaps vain but laudable effort to maintain entire verbal consistency, some courts have held that the fraudulent purposes of the promisor and his false representation of an existing intention to perform, when such an intent did not exist, is the misrepresentation of a fact. 26 C. J. 1093; *Hill* v. *Gettys*, 135 N. C. 373, 47 S. E. 449. It has been said that the state of the promisor's mind at the time he makes the promise is a fact, and one which is exclusively within the promisor's own knowledge; so that, if he represents his state of mind—that it, his intention—as being one thing when in fact his purpose is just the contrary, he

misrepresents a then existing fact. That is, when he expressly or impliedly avers that he has an existing intention to fulfil his promise, that intention is a fact, and if false and fraudulent is a fraudulent representation which may or may not supply the basis for an action in tort for the deceit. *Palmetto Bank & Trust Co.* v. *Grimsley*, 134 S. C. 493, 133 S. E. 437, 51 A. L. R. 42, 63; *Laing* v. *McKee*, 13 Mich. 124, 87 Am. Dec. 740, note; *Wilson* v. *Eggleston*, 27 Mich. 257.

[5-7] This general language from *Metcalf* v. *Hart*, 3 Wyom. 513, 27 Pac. 900, 913, 31 Pac. 407, 31 Am. St. Rep. 156, is worthy of repetition: "It would be rash to attempt to give a perfect definition of fraud. Many eminent jurists have attempted it. None have succeeded. The best definitions given admit of so many exceptions as to greatly impair their usefulness in judicial discussion. The only safe way seems to be to define, or rather describe, the fraud suspected to exist in any given case, by comparison with similar cases selected from the reports. Of all the attempted definitions to be found, it seems that none are more satisfactory or instructive than merely to say that fraud is unfair dealing; and when, through inducements held out by one person, even only by means of a promise by which another person is influenced to change his position so that he cannot be placed *in statu quo,* and will be seriously damaged unless the promise is fulfilled, then the refusal to perform is fraud. Any transaction that outrages our sense of justice or shocks the conscience of an honest man may well be viewed with suspicion, and scrutinized closely."

[8] So it has been frequently held that fraud may sometimes be predicated upon the failure to perform a promise where the promise is the device to accomplish

the fraud. *Pocatello Security Trust Co.* v. *Henry*, 35 Idaho 321, 206 Pac. 175, 27 A. L. R. 337, note; 12 R. C. L. 258.

Mr. Williston thus construes the decisions on this point: "It is frequently said that a promisory statement cannot be the basis of an action for deceit, and a prediction of future events is at best a statement of opinion. It is undoubtedly true that failure to perform a promise cannot amount to a fraud. And in many jurisdictions, without consideration of the question whether a promise was made with an intention not to perform, it is held that the making of the promise cannot be an actionable fraud." (Citing among other cases *Watkins* v. *West Wytheville Co.*, 92 Va. 1, 22 S. E. 554.) "It has been pointed out, however, that when a promise is made with an intention not to perform it, the promisor is guilty of a misrepresentation—and in a number of cases, generally of recent date, the doctrine seems to be broadly accepted that a promise which the promisor does not intend to carry out may·have been a misstatement of a material fact." 3 Williston on Contracts, section 1496.

[9] It is upon such alleged deceit and fraud that the plaintiff here bases his action. We are of opinion that an action for such deceitful and fraudulent promises as are here alleged may be maintained, but only where there are supporting allegations of diligence and readiness on the part of the plaintiff and refusal to perform by the defendants and the resulting damages. In a case like this such supporting allegations are necessary.

Adverting then to the amended notice in this case, we find that it contains some of the allegations necessary in such a case, but that it omits some which are essential.

[10] In all cases of fraud, either at law or in equity, we take it that the rule requiring promptness and diligence applies. *Wilson* v. *Hundley,* 96 Va. 96, 30 S. E. 492, 70 Am. St. Rep. 837.

[11] This rule requiring prompt disaffirmance of the contract where a fraud is alleged, is everywhere recognized, and is thus stated in 2 Pomeroy's Equity Jurisprudence (4th ed.), section 897: "All these considerations as to the nature of misrepresentations require great punctuality and promptness of action by the deceived party upon his discovery of the fraud. The person who has been misled is required, as soon as he learns the truth, with all reasonable diligence, to disaffirm the contract, or abandon, the transaction, and give the other party an opportunity of rescinding it, and of restoring both of them to their original position. He is not allowed to go on and derive all possible benefits from the transaction, and then claim to be relieved from his own obligations by a rescission or a refusal to perform on his own part. If after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations."

[12] If the fraud so alleged was in fact perpetrated, the plaintiff must have known of it within thirty days from the date of the sale, which was May 3, 1924; whereas, this action was not instituted until nearly two and a half years thereafter—that is, on October 5, 1926, and the original action was based on the contract alleged. This delay is absolutely unexplained and seems to be inexplicable in view of other allegations of the notice. The inference is that the plaintiff was either unable or unwilling to exercise his option.

[13–15] The fraud, if any, is the failure to reconvey, but it appears from both the notices, amended and original, that before the plaintiff had any right to demand a reconveyance of the property, he was not only under obligation to pay to Charles C. Carlin the sum of $2,800.00 for his services, but also under obligation, within thirty days from May 3, 1924, to refund the purchase price of the property as conditions precedent to its reconveyance to him. It is vital, not only in actions on contract, but also in an action for deceit and fraud growing out of such a repudiated contract as this, that the party complaining shall be ready, willing and able to perform his part of the agreement. It may be true in this case, under the allegations of the notice, that the plaintiff was not bound to make an actual tender, either of the $2,800.00 due to Carlin, or of the purchase price of the property at the auction sale, because, as he avers, the property had been conveyed first to Carlin and then to Massie within the thirty days; but how can he establish any damages or maintain his action therefor unless he was or could have been ready, able and willing to perform, on his own part? It is fundamental that bare allegations of fraud will not of themselves support an action for damages—the facts showing the fraud and the resulting damage must be alleged.

[16, 17] Neither fraud nor damage can be presumed, and the allegation of a mere purpose to commit fraud cannot be made the basis of an action. The purpose must be consummated, the injury inflicted. In this case clearly the duty to reconvey did not and could not arise unless and until the plaintiff had himself performed, or offered to perform, the conditions precedent. He has suffered no damages unless he could have been ready to pay the sum admitted to be required of him

to entitle him to demand the reconveyance. It cannot be fairly presumed that the defendants would have failed or refused to reconvey the property if that duty had ever arisen. As the defendants who are charged with the fraud controlled the property during the thirty days, they could have discharged their obligation to the plaintiff; and the notice itself alleges that it was only after the lapse of the thirty days that Carlin and Massie had it conveyed to the two corporations, and in these the defendants are large stockholders. The notice is fatally defective because of the absence either of any allegation of readiness and ability to perform on the part of the plaintiff, or of any demand for the reconveyance or of any refusal or inability on the part of the defendants to perform their promises—that is, to reconvey within thirty days, when the plaintiff had paid, or was ready to pay, the sums required of him by the agreement.

The principle to which we are adverting is thus expressed in *Clark and Others* v. *White*, 12 Peters 196, 9 L. Ed. 1054: "In equity, as in law, fraud and injury must concur to furnish ground for judicial action; a mere fraudulent intent, unaccompanied by any in-injurious act, is not the subject of judicial cognizance."

In *Hope* v. *Shirley* (Tex. Civ. App.), 187 S. W. 973, it is thus succinctly stated: "It is well settled by the authorities that even if a fraud be practiced, no cause of action arises unless some damages which are legally recoverable as a result thereof are alleged and shown."

[18] Many cases sustain this succinct statement of the rule, found in 12 R. C. L., section 10, page 239: "The ground of the action of deceit is fraud and damage, and when both concur the action will lie. More-over, both must concur to constitute actionable fraud, a common statement of the rule being that neither

fraud without damage, nor damage without fraud, is sufficient to support an action." To justify relief for fraud, either at law or in equity, the party asking for it must have been damaged or misled to his own hurt. 12 R. C. L., section 138, page 388.

[19] In 2 Pomeroy's Equity Jurisprudence (4th ed.), section 898, the correct rule is thus stated: "The statement of facts of which it (fraudulent misrepresentation) consists must not only be relied upon as an inducement to some action, but it must also be so material to the interest of the party thus relying and acting upon it that he is pecuniarily prejudiced by its falsity— is placed in a worse position than he otherwise would have been. The party must suffer some pecuniary loss or injury as the natural consequence of the conduct induced by the misrepresentation. In short, the representation must be so material that its falsity renders it unconscientious in the person making it to enforce the agreement or other transaction which it has caused. Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal; courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral."

Black on Rescission & Cancellation, section 567, says this: "In order to obtain a rescission of a contract, it is necessary for the complaining party to show that he has suffered actual loss or injury by reason of it, or that he is threatened with substantial loss or injury which will fall upon him if the contract is not annulled.

Black gives the reason for this rule in section 37: "*Resulting Loss or Damage to Defrauded Party.*—As a general rule, a fraud which causes no injury is not legally cognizable; and it is an essential part of the definition of fraud as a cause for the intervention of

equity, or for a party to take steps to rescind a contract or other obligation into which he has entered, that it should have resulted, or that it will result, in some loss, damage, detriment, or injury to him. Neither courts of law nor courts of equity exercises their powers for the purpose of enforcing moral obligations or correcting unconscientious acts which are not followed by any loss or damage; fraud and injury must concur to furnish a ground of judicial action. In the case of executed contracts, the loss, if any, will naturally have occurred before steps are taken to rescind. But in the case of executory contracts, the rule does not mean that the party complaining should have sustained actual loss at the moment of rescinding or filing his bill for rescission, but it is enough to show that such will be the inevitable result if the contract is completed according to its terms. In the State of Louisiana this has been incorporated into the Code, but it will probably be recognized everywhere as a sound principle of equity jurisprudence."

In 9 Cyc., page 431, it is said: "*Damage Must be Shown.*—As in an action for deceit, so also in order to avoid a contract for false representations, it is essential that the party complaining shall have been prejudiced or injured by the fraud."

In Elliott on Contracts, Vol. 1, section 91, page 163, this appears: "Before fraud will rise to an action for deceit, or for rescission, or before a sufficient defense can be predicated thereon in an action on the contract, the fraud practiced must result in injury. The principle of *damnum absque injuria* applies."

*Russell* v. *Industrial Transportation Co.*, 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1.

There is then no basis for a recovery under the peculiar facts of this case in the absence of any allega-

tion to the effect that the plaintiff was, or could have been, ready, able and willing to pay the consideration agreed upon, for unless this were true no promise was violated, no wrong was consummated and he has suffered no damage. He cannot evade all of the obligations of the contract as induced by fraud, and at the same time claim all of its benefits. He has not alleged that he either exercised or could have exercised his option to repurchase the property.

[20] While the plaintiff had the option to redeem property, he was under no obligation to do so, and the rule stated in *Matthews* v. *LaPrade*, 130 Va. 408, 107 S. E. 795, applies, though that was an action for breach of contract and not an action for deceit and fraud based upon a contract. It is thus expressed: "The original notice nowhere alleges that the plaintiff ever exercised the option given him, nor does it allege any facts which would in any way aid the description of the land given in the receipt copied into the notice nor any facts which would bring the plaintiff's claim to damages within the exception to what he states is the general rule prevailing in this State in such cases. The demurrer was, therefore, properly sustained."

Every case has its own peculiar facts, and in this case it is impossible to determine from the facts alleged whether or not the defendants would have perpetrated the fraud which is charged, until the plaintiff had, in some way, indicated his desire to exercise his option. The presumption from the allegation of the notice is either that he elected not to do so, or was not able to do so. The contention that the action can be maintained by merely alleging that the parties defendant made the contract with the fraudulent intent not to perform and fraudulently failed to perform, in the absence of any allegation that the plaintiff ever even

asked them to perform, ever desired them to perform, or could have complied with his own agreement to supply the consideration had the defendants tendered him a reconveyance of the property, cannot be sustained.

[21] The case presents other interesting questions, but this is decisive. In the absence of an allegation that he was, or could have been, ready to pay the $2,800.00 that he was under obligation to pay Carlin, and of an allegation that within thirty days he could have been or was ready, able and willing to pay the purchase money, he is not entitled to maintain the action. The fair construction of the notice itself is that notwithstanding the conveyance to Carlin and the later conveyance to Massie, with notice of the alleged agreement with the plaintiff, and even after the conveyance of the property to the two corporations, the defendants still had control of it and could have had it reconveyed to the plaintiff if he had supplied the consideration and so performed the necessary conditions precedent.

There is no Virginia case which has involved a precisely similar question, and there are none in which kindred questions as to fraud have been adjudicated which are contrary to the conclusion which we have stated.

There is no error in the judgment of the trial court sustaining the demurrer.

*Affirmed.*