WINSTON P. BOYKIN, ET AL.

V.

HERMITAGE REALTY, ET AL.

Record No. 840522

September 4, 1987

Present: All the Justices

*Barry W. Norwood* for appellants.
*N. Kendall Newsom (Bischoff, Bondurant, Harris & Newsom, P.C.,* on brief), for appellees.

POFF, J., delivered the opinion of the Court.

The sole issue framed on this appeal is whether the evidence was sufficient to support the findings of a jury that the defendants had induced the plaintiffs to enter into a contract of sale by misrepresenting an existing fact. We conclude that the trial court erred in setting the verdicts aside.

The Yeonas Company developed Stonewall Manor, a condominium project, in several successive stages. As each section was completed, Yeonas furnished one of the units as an office for the use of its exclusive real estate agent, Hermitage Realty. A map, a copy of the original plan of development approved by the Office of Planning and Zoning of Henrico County, was customarily displayed on the wall of the real estate office. The original plan of development showed several "play areas", each outlined by broken lines, located in different sections. One playground was depicted in a wooded area behind the condominiums planned for construction on Skirmish Run Drive in the Hatteras Heights section.

These units were completed and offered for sale in the spring of 1980, and the real estate agent's office was moved to a unit in the new section. Four couples, Mr. and Mrs. Winston P. Boykin, Dr.

and Mrs. James A. Hall, Jr., Mr. and Mrs. George T. Gagnon, and Mr. and Mrs. Richard F. Barney, inspected other units in Stonewall Manor but became interested in the new dwellings on Skirmish Run Drive. Unlike the original map of the plan of development, the map on the wall in the Hatteras Heights office contained no broken lines depicting a playground in the wooded area behind the new dwellings. Relying upon the assurances of Peg Pappas, Hermitage Realty's agent, that the wooded area would remain undeveloped, each couple bought a condominium on Skirmish Run Drive. Each couple paid additional consideration of $1,000 for privacy in their backyard. Several months later, Yeonas constructed a playground in the wooded area.

The four couples filed separate motions for judgment against Yeonas, Hermitage, and Pappas, claiming damages for fraud and deceit. The cases were consolidated for trial, a jury returned a verdict for each plaintiff against Hermitage and Pappas,* and the trial court sustained the defendants' motion to set the verdicts aside and entered judgment for the defendants in each case. The trial court based its judgment on a finding that "the plaintiffs produced no evidence that can realistically be characterized as misrepresentation with respect to actually existing or past facts."

The evidence relevant to the trial court's finding is the testimony relating to the conversations between the plaintiffs and Pappas. Mrs. Boykin testified that she and her husband "asked [Pappas] specifically about the land behind us; if anything — anything — would ever be put back there, and we were told no, a tree would never even be touched."

Dr. Hall testified that, in response to his question "is anything at all planned to be built back there", Pappas "looked at me, and she said, firmly, 'No, nothing at all. The woods will remain exactly as they are.'"

Mr. Gagnon testified that "Mrs. Pappas told us . . . there was not enough room to build anything back there and there would be privacy. I said, 'Nothing is going to be built back there,' and she said, 'Nothing at all.'"

Mr. Barney testified that when Pappas told him the wooded area would remain undeveloped, he said, "'Are you sure,' and she said, 'Yes.'"

---

* The plaintiffs nonsuited their claims against Yeonas.

Confirming her husband's testimony, Mrs. Barney explained that "[w]e are middle-aged, and we need privacy and wanted it at that time." The couple bought their unit, Mrs. Barney said, because "[w]e felt [Pappas] was a professional . . . and we trusted her solely."

Pappas did not contradict the witnesses for the plaintiffs. Concerning the Barneys, she testified, "Well, what they have said is true. They asked me what would happen to the woods, and I told them that the woods would remain." Asked about the other three plaintiff couples, she replied that she had "said this to all of them." Pappas acknowledged that she had seen the original map depicting the wooded area as one of the several sites proposed for development as a playground and that she was aware that Yeonas had "promised that they would sometime put in the play areas." In explanation of the statements she made to prospective purchasers, she said that she "was always told they will go in when the homeowners decide where they want them."

■ In support of the trial court's finding, the defendants rely upon *Lloyd* v. *Smith*, 150 Va. 132, 145, 142 S.E. 363, 365 (1928), where we said that "an action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud."

■ The defendants overlook the qualifications *Lloyd* placed upon the general rule.

> [A]n action in tort for deceit and fraud may sometimes be predicated on promises which are made with a present intention not to perform them . . . . [T]he gist of fraud in such case is not the breach of the agreement to perform, but the fraudulent intent . . . . [T]he fraudulent purposes of the promisor and his false representation of an existing intention to perform . . . is the misrepresentation of a fact . . . . [T]he state of the promisor's mind at the time he makes the promise is a fact, and . . . if he represents his state of mind . . . as being one thing when in fact his purpose is just the contrary, he misrepresents a then existing fact.

*Id.* at 145-46, 142 S.E. at 365-66. We applied the *Lloyd* exception to the general rule in *Sea-Land Service, Inc.* v. *O'Neal*, 224 Va.

343, 351-52, 297 S.E.2d 647, 651-52 (1982) (employer's promise of job transfer was actionable as misrepresentation of existing fact), and in *Colonial Ford* v. *Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985) (promise to pay debt of another may constitute actual fraud). We apply the exception here.

■ The representations Pappas made to the plaintiffs were promises of privacy made in reply to express inquiries. The inquiries were unambiguous, and the promises were responsive, unconditional, and reinforced by the map displayed on the wall of the agent's office. Pappas was fully aware of a fact crucially relevant to the plaintiffs' concern for privacy in their homes — a fact unknown to the plaintiffs — *viz.*, that the official map of the plan of development of Stonewall Manor and the copies of that map used in sales promotions in other sections of the subdivision indicated that the wooded area in the Hatteras Heights section was one of the sites proposed for development as a playground.

■ A jury, guided as this jury was by the court's unchallenged instructions defining actionable misrepresentation and the burden of proof, could reasonably conclude that Pappas' repeated assurances that the area would remain undeveloped were deliberate misrepresentations of existing facts, all made to induce the several plaintiffs to pay a premium price for property they otherwise would not have bought.

■ Even so, the defendants argue that the plaintiffs had equal access to the map of the plan of development, a document of public record, and that this Court should uphold the judgment of the trial court by applying the doctrine of *caveat emptor*. But a vendor who procures the sale by fraudulent representations may not invoke the doctrine of *caveat emptor*.

■ "[I]n Virginia, one cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth." *Nationwide Ins. Co.* v. *Patterson*, 229 Va. 627, 631, 331 S.E.2d 490, 492 (1985). The doctrine of *caveat emptor* "affords no protection to a seller who makes false representations of a material fact, constituting an inducement to the contract, on which the buyer had a right to rely." *Watson* v. *Avon Street Center*, 226 Va. 614, 618, 311 S.E.2d 795, 798 (1984); *accord Robberecht* v. *Maitland Bros.*, 220 Va. 109, 111-12, 255 S.E.2d 682, 683 (1979); *see also Wilson*

v. *Carpenter*, 91 Va. 183, 190, 21 S.E. 243, 245 (1895); *Brown* v. *Rice's adm'r.*, 67 Va. (26 Gratt.) 467, 473-74 (1875).

We hold, therefore, that the trial court erred in setting aside the jury's verdicts. We will reverse the judgment entered January 18, 1984, reinstate the verdicts, and enter final judgment here for the plaintiffs.

*Reversed and final judgment.*