Present: Koontz, Kinser, Lemons, Goodwyn, Millette, and Mims
JJ., and Russell, S.J.

PHILLIP ABI-NAJM, ET AL.

v.  Record No. 091546     OPINION BY JUSTICE DONALD W. LEMONS
                                  September 16, 2010
CONCORD CONDOMINIUM, LLC


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N.A. Kendrick, Judge

In this appeal from the dismissal of an action alleging

breach of contract, fraud in the inducement, and violation of

the Virginia Consumer Protection Act, Code §§ 59.1-196 et seq.

("VCPA" or "the Act"), we consider whether the trial court

erred when it sustained the demurrers of Concord Condominium,

LLC ("Concord") to the complaints of Phillip Abi-Najm ("Abi-

Najm") and other purchasers of residential condominiums

(collectively, "the Purchasers") from Concord on the grounds

that the Purchasers' breach of contract claims were barred by

the merger doctrine, and their fraud in the inducement and VCPA

claims were barred by the economic loss doctrine.

I.   Facts and Proceedings Below

This appeal is comprised of two civil actions filed

against Concord in the Circuit Court of Arlington County.[1]  The

first action was brought by Laura and Bradford Reed, and the

---

[1] Pursuant to Rule 5:9, the two actions were consolidated
in this appeal.

second action was brought by Abi-Najm and 24 co-plaintiffs ("the Abi-Najm Complaint," collectively "the Complaints"). The substantially similar suits contain three counts: (i) breach of contract, (ii) violation of the VCPA, and (iii) fraud in the inducement.[2] The following factual recitation is taken from the Abi-Najm Complaint.

The Purchasers alleged that they were interested in purchasing a condominium and met with sales agents for the West Village of Shirlington in Arlington County in 2005 and 2006. The Purchasers entered into separate purchase agreements ("Contracts"), each containing a schedule of standard finishes ("Schedule A") and various addenda. In pertinent part, Schedule A provided that the flooring of each condominium would be "Bruce Oak hardwood, 3/4"." Schedule A also contained the following language: Concord "may substitute substantially equivalent materials and finishes for those specified herein."

Paragraph 22(a) of the Contract, entitled "MISCELLANEOUS," contained the following provision pertinent to this appeal:

> Notwithstanding anything to the contrary herein, acceptance of the deed at settlement shall

---

[2] In the Complaints, the fraud in the inducement count is labeled "Common Law Fraud," but the facts alleged are more accurately characterized as a claim for fraud in the inducement. At oral argument, counsel for the Purchasers referred to this count as fraud in the inducement, and we will do the same herein. Abi-Najm and certain of his co-plaintiffs also alleged counts for breach of contract and trespass in the Abi-Najm Complaint. Those counts are not part of this appeal.

constitute Purchaser's acknowledgment of full compliance by [Concord] with the terms of this Agreement. The terms hereof shall be merged into and extinguished by delivery of the deed at settlement except for Sections 4(b), 5, 17, 18, 21, 22 and 23 which shall survive delivery of the deed and shall not be merged therein.

At the center of this litigation is the Purchasers' allegation that instead of the three-quarter-inch Bruce Oak hardwood flooring set forth in Schedule A, Concord delivered "prefabricated engineered hardwood, 3/8" [flooring]," and this substitution was "not substantially equivalent to Bruce Oak hardwood, 3/4"." The Purchasers alleged that they did not learn of this substitution until after closing on the condominiums, nor would a "normal visual inspection" reveal the substitution. The Purchasers alleged that this substitution constituted a material breach of the contract for which they sought damages in the amount of at least $50,000 per condominium, in addition to prejudgment interest and costs.

In their VCPA count, the Purchasers alleged that their purchase of the condominiums was a consumer transaction as defined by the Act, and Concord's intentionally false and misleading information concerning the flooring constituted misrepresentations of a material fact, and fraudulent acts in violation of the VCPA. The Purchasers also alleged that Concord had knowledge that the information concerning the flooring was untrue, that Concord acted with the intent to

3

deceive the Purchasers, and that Concord willfully concealed the flooring substitution. Finally, the Purchasers alleged that Concord "knew or reasonably should have known that its disclosure of [the actual flooring material] would have caused the [Purchasers] to reconsider or renegotiate the Contracts." As in their breach of contract count, the Purchasers claimed damages of $50,000 per condominium, treble damages pursuant to Code § 59.1-204(A), and $350,000 in punitive damages, in addition to prejudgment interest and costs including attorney's fees.

In their fraud in the inducement count, the Purchasers set forth substantially similar allegations as were made in the VCPA count, particularly that Concord knowingly misrepresented the quality of the flooring it would deliver and that this misrepresentation involved a material fact. The Purchasers further alleged that they relied upon those misrepresentations, and absent those misrepresentations they would not have entered into the Contracts. They further alleged that in the alternative, they would have renegotiated the Contracts. The Purchasers alleged damages of $50,000, and they sought punitive damages of $350,000 per condominium, prejudgment interest, costs and attorney's fees under this count.

In response Concord filed demurrers to the Complaints, arguing that the breach of contract claims were barred by

4

merger, and the VCPA and fraud in the inducement claims were barred by the economic loss rule. The trial court held a hearing on Concord's demurrers, at the conclusion of which it held: "With respect to the merger clause, if you look at paragraph 22(a) of the [Contract], it is pretty clear that the merger clause applies. And claims that merge into the deed can, in fact, and do exist in this case. And as such, there is no breach of contract." With respect to the Purchasers' fraud in the inducement and VCPA claims, the trial court held that "a separate tort . . . does not exist," and therefore the "economic [loss doctrine] as [stated] in Sensenbrenner" precludes those causes of action. Accordingly, the trial court entered orders sustaining Concord's demurrers to the Complaints.

The Purchasers timely filed their notice of appeal and we granted an appeal on the following assignments of error:

1.   The trial court erred when it granted respondent's demurrer and dismissed petitioners' breach of contract claim on the grounds that the claim was barred by the merger doctrine.

2.   The trial court erred when it granted respondent's demurrer and dismissed petitioners' claims under the Virginia Consumer Protection Act and for fraud in the inducement on the grounds that the claims were barred by the economic loss doctrine.

5

## II.  Analysis

### A.  Standard of Review

We apply well-established principles guiding our review of a trial court's judgment sustaining a demurrer.

> "The purpose of a demurrer is to determine whether a motion for judgment states a cause of action upon which the requested relief may be granted."  Tronfeld v. Nationwide Mut. Ins. Co., 272 Va. 709, 712, 636 S.E.2d 447, 449 (2006) (citing Welding, Inc. v. Bland County Serv. Auth., 261 Va. 218, 226, 541 S.E.2d 909, 913 (2001)).  "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof."  Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003).  Accordingly, we accept as true all properly pled facts and all inferences fairly drawn from those facts.  Id.  "Because the decision whether to grant a demurrer involves issues of law, we review the circuit court's judgment de novo."  Dreher v. Budget Rent-A-Car Sys., 272 Va. 390, 395, 634 S.E.2d 324, 326-27 (2006) (citing Glazebrook, 266 Va. at 554, 587 S.E.2d at 591.)

Augusta Mutual Ins. Co. v. Mason, 274 Va. 199, 204, 645 S.E.2d 290, 293 (2007).

### B.  The Merger Doctrine

The trial court sustained Concord's demurrer to the Purchasers' breach of contract action, holding that Section 22(a), the Contracts' merger clause, caused Concord's obligations under Schedule A to be merged into and extinguished by the deed.  The Purchasers argue that the merger doctrine is inapplicable to this case.  For the reasons stated herein, we agree with the Purchasers.

6

The merger doctrine has been long-recognized by this Court.  See Woodson v. Smith, 128 Va. 652, 104 S.E. 794 (1920). "The merger doctrine deals with extinguishing a previous contract by an instrument of higher dignity," the deed.  Empire Mgmt. & Dev. Co. v. Greenville Assocs., 255 Va. 49, 52, 496 S.E.2d 440, 442 (1998).  "However, provisions which are collateral to the passage of title and not covered by the deed are not merged into the deed and survive its execution."  Beck v. Smith, 260 Va. 452, 455, 538 S.E.2d 312, 314 (2000) (citing Empire Mgmt., 255 Va. at 54, 496 S.E.2d at 443; Davis v. Tazewell Place Assocs., 254 Va. 257, 262-63, 492 S.E.2d 162, 165 (1997); Miller v. Reynolds, 216 Va. 852, 854-55, 223 S.E.2d 883, 885 (1976); and Woodson, 128 Va. at 656, 104 S.E.2d at 795).

> In discussing the doctrine of merger, we have explained that a deed "is a mere transfer of title."  Miller, 216 Va. at 855, 223 S.E.2d at 885.  The deed is the final expression of the agreements between the parties as to "every subject which it undertakes to deal with," and any conflicts between the terms of prior agreements and the terms of the deed are resolved by the deed.  Woodson, 128 Va. at 656, 104 S.E. at 795.

Id. at 456, 538 S.E.2d at 314-15.

In Woodson, one of our earliest cases addressing the merger doctrine, a seller of two parcels of real estate entered into two separate contracts of sale, each of which reserved in

7

the seller a right of possession until November 15, 1919. 128 Va. at 653-54, 104 S.E. at 794. On February 27, 1919, the seller delivered the deeds, which "contain[ed] no reference to the antecedent contracts" of sale. Id. at 654, 104 S.E. at 794. The trial court held that the contracts of sale merged into the deeds, thereby entitling the grantees to immediate possession of the property. Id. at 655, 104 S.E. at 795.

We affirmed, observing that the deeds in Woodson "contained covenants which by statute in Virginia . . . meant that the grantee 'might at any and all times thereafter, peaceably and quietly enter upon and have, hold, and enjoy the land conveyed by the deed,'" and therefore "[t]he stipulations in the contracts and the covenants in the deeds, as related to the question of possession, [were] in patent and irreconcilable conflict." Id. (quotation marks omitted). Despite the outcome in Woodson, we noted, "[d]oubtless many cases may arise in which distinct and unperformed stipulations contained in a contract for sale will not be merged in or discharged by deed where that instrument is silent upon the subject of such stipulations." Id. at 656, 104 S.E. at 795.

Since our decision to uphold the doctrine of merger in Woodson, its narrow scope and disfavored status are evident in our repeated refusal to apply it to extinguish agreements that are not addressed in the deed and collateral to the passage of

title.  See Empire Mgmt., 255 Va. at 53-54, 496 S.E.2d at 442-43 (reversing the trial court's application of the merger doctrine to a rent guarantee in a sales contract, holding that the rent guarantee was not covered in the deed and was collateral to the passage of title); Davis, 254 Va. at 263, 492 S.E.2d at 165 (an express warranty contained in a contract for sale did not merge with the deed and was enforceable); and Miller, 216 Va. at 854, 223 S.E.2d at 884-85 (a condition in the purchase contract making the sale contingent upon the land's suitability for percolation and its qualification for a building permit did not merge into the deed).

Our most recent case examining the merger doctrine, Beck, concerned a "contract for sale [that] provided that any utility easement would 'not materially and adversely [affect the buyers'] intended use of the Property.' "  260 Va. at 455, 538 S.E.2d at 314.  The contract for sale also provided that "the representations and warranties of the seller contained in the contract 'SHALL BE DEEMED MERGED INTO THE DEED DELIVERED AT SETTLEMENT AND SHALL NOT SURVIVE SETTLEMENT.' "  Id.  None of the quoted language was repeated in the deed.  Id.

In Beck, we observed, "not all agreements between the parties regarding the purchase and sale of . . . property are contained in the deed."  Id. at 456, 538 S.E.2d at 315.  "Such agreements are considered collateral to the sale if they are

9

distinct agreements made in connection with the sale of the property, if they do not affect the title to the property, if they are not addressed in the deed, and if they do not conflict with the deed." Id. Notwithstanding the language of the purchase agreement calling for representations and warranties to be merged into the deed, we held, "the agreement in the contract for sale regarding the impact of utility easements on the [buyers'] intended use of the property was collateral to the transfer of title, was not merged into the deed, and survived the execution of the deed." Id.

In the case before us, the deeds are simply instruments intended to convey title to the condominiums to the Purchasers. The deeds are silent as to Schedule A. Therefore, unlike in Woodson, in this case there is no "patent and irreconcilable conflict" between the Contracts and the deeds. 128 Va. at 655, 104 S.E. at 795.

Turning to the Contracts themselves, the flooring agreement set forth in Schedule A "is a distinct agreement, does not affect the validity or nature of the title conveyed, is not addressed in the deed, and does not conflict with the terms of the deed." Beck, 260 Va. at 456, 538 S.E.2d at 315. Accordingly, we hold that the representations in Schedule A are collateral to the transfer of title, they are not merged into the deed, and therefore they survive delivery of the deed.

Based on the foregoing, the trial court erred when it sustained Concord's demurrer to the Complaints on the ground that the merger doctrine precluded enforcement of the Contracts.[3]

### C.    The Economic Loss Doctrine

The trial court sustained Concord's demurrers to the Purchasers' VCPA and fraud in the inducement claims on the ground that the economic loss doctrine precluded such claims. In determining whether the economic loss doctrine precludes an action in tort, we have observed:

> The law of torts is well equipped to offer redress for losses suffered by reason of a "breach of some duty imposed by law to protect the broad interests of social policy." Kamlar [Corp. v. Haley, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983).] Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts. See id.

---

[3] In the trial court and on appeal to this Court, Concord asserts that the language in Schedule A permitting it to "substitute substantially equivalent materials and finishes" precludes the Purchasers' breach of contract action, and that the flooring substitution was not material to the contract. However, in reviewing a circuit court's ruling sustaining a demurrer, "we accept as true all properly pled facts and all inferences fairly drawn from those facts." Augusta Mutual, 274 Va. at 204, 645 S.E.2d at 293. The Purchasers alleged that the actual flooring installed by Concord was "not substantially equivalent," and that the substitution was material to the Contracts. Therefore, at this stage of the litigation, a court is required to accept the truth of the pleadings, notwithstanding what a fact-finder ultimately may determine.

11

Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988).

More recently we observed, "[t]he law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society." Filak v. George, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004). "[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Id.

Based on the foregoing, the question whether the economic loss doctrine applies requires a court first to determine "whether a cause of action sounds in contract or tort," ultimately by ascertaining "the source of the duty violated." Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998).

Notwithstanding the limitations on certain tort actions created by the economic loss doctrine, it is well-established that

> a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages, including, where appropriate, punitive damages.

12

*Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991).

*Dunn Construction Co., Inc. v. Cloney*, 278 Va. 260, 266-67, 682 S.E.2d 943, 946 (2009).

As this recapitulation of the law reveals, the question before this Court is whether the Purchasers alleged that Concord breached a duty owing to them independent of any duties assumed by Concord pursuant to the Contracts. We turn now to the Purchasers' respective claims.

### i. The Virginia Consumer Protection Act

Concord argues that any statutory duties arising under the Act "are duties that arise solely by virtue of the [Contracts] entered into between the [Purchasers] and Concord." We disagree.

The VCPA was enacted with "the intent of the General Assembly that [it] shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Code § 59.1-197. Pursuant to Code § 59.1-200(A)(6), the VCPA makes it unlawful for "a supplier in connection with a consumer transaction" to "[m]isrepresent[] that goods or services are of a particular standard, quality, grade, style, or model." In pertinent part, Code § 59.1-198 defines a "[c]onsumer transaction" as "[t]he advertisement, sale, lease, license or offering for sale, lease

13

or license, of goods or services to be used primarily for personal, family or household purposes." "Goods" are defined as "all real, personal or mixed property, tangible or intangible." Id. (emphasis added). Lastly, a "[s]upplier" is defined as "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions." Id.

Based on the plain language of the VCPA, it is unlawful to misrepresent that goods are of "a particular standard, quality, grade, style, or model." Code § 59.1-200(A)(6). This duty not to misrepresent the quality, grade, or style of goods is a statutory duty that exists independent of the Contracts entered into between the parties to this litigation, viz., the duty is "not one existing between the parties solely by virtue of the contract." Dunn Construction, 278 Va. at 267, 682 S.E.2d at 946. Because the Purchasers have alleged that Concord breached a duty existing independent of the Contracts, we hold that the trial court erred when it sustained Concord's demurrers to the Purchasers' VCPA claims.

ii. Fraud in the Inducement

" '[A] false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract.' " George Robberecht Seafood, Inc. v. Maitland Bros. Co., 220 Va. 109, 111-12, 255 S.E.2d 682, 683

14

(1979) (quoting Wilson v. Carpenter, 91 Va. 183, 187, 21 S.E. 243, 244 (1895)). "Fraud in the inducement of a contract is also ground for an action for damages." Id. at 112, 255 S.E.2d at 683; see also Augusta Mutual, 274 Va. at 204, 645 S.E.2d at 293.

In Lloyd v. Smith, 150 Va. 132, 145, 142 S.E. 363, 365 (1928), we said that "an action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." See also Boykin v. Hermitage Realty, 234 Va. 26, 29, 360 S.E.2d 177, 178 (1987). However, "Lloyd placed [qualifications] upon the general rule." Boykin, 234 Va. at 29, 360 S.E.2d at 178.

> "[A]n action in tort for deceit and fraud may sometimes be predicated on promises which are made with a present intention not to perform them . . . . [T]he gist of fraud in such case is not the breach of the agreement to perform, but the fraudulent intent . . . . [T]he fraudulent purposes of the promisor and his false representation of an existing intention to perform . . . is the misrepresentation of a fact . . . . [T]he state of the promisor's mind at the time he makes the promise is a fact, and . . . if he represents his state of mind . . . as being one thing when in fact his purpose is just the contrary, he misrepresents a then existing fact."

15

Id. at 29, 360 S.E.2d at 178-79 (quoting Lloyd, 150 Va. at 145-46, 142 S.E. at 365-66).

In support of its position, Concord cites to a number of this Court's cases where we concluded that the allegations were legally insufficient to support an actionable tort claim because a contract or an agreement was the source of the duty allegedly breached. See Dunn Construction, 278 Va. at 268, 682 S.E.2d at 947 ("The fact that the representation was made in order to obtain payment . . . does not take the fraud outside of the contract relationship."); Augusta Mutual, 274 Va. at 206, 645 S.E.2d at 294 ("The duties that [the agent for the insurance company] allegedly violated by making fraudulent representations . . . arose solely by virtue of the Agency Agreement."); Filak, 267 Va. at 618, 594 S.E.2d at 613 ("[T]he plaintiffs' claim . . . merely sought recovery for losses allegedly suffered as a result of [the defendant's] failure to fulfill her oral contract."); and Richmond Metro. Auth., 256 Va. at 560, 507 S.E.2d at 348 ("Nothing in the record suggests that [the defendant] did not intend to fulfill its contractual duties at the time it entered into the [contract].").

Unlike these cases, in the instant case the Purchasers alleged that Concord had knowledge that its representations concerning the flooring were untrue, that Concord acted with the intent to deceive the Purchasers, and that Concord

16

willfully concealed the flooring substitution.  The Purchasers also alleged that Concord "knew or reasonably should have known that its disclosure of [the actual flooring material] would have caused the [Purchasers] to reconsider or renegotiate the Contracts."  In short, the Purchasers alleged that Concord made misrepresentations of the flooring it promised to install "with a present intention not to perform" its obligations.  Boykin, 234 Va. at 29, 360 S.E.2d at 178.  The fraud alleged by the Purchasers was perpetrated by Concord before a contract between the two parties came into existence, therefore it cannot logically follow that the duty Concord allegedly breached was one that finds its source in the Contracts.  Based on the plain language of the Complaints, we hold that the Purchasers have alleged an actionable claim for fraud in the inducement.

## III.  Conclusion

We hold that the trial court erred when it sustained Concord's demurrers.  Accordingly, we will reverse the judgments of the trial court in each case and remand these cases for further proceedings consistent with this opinion.

Reversed and remanded.

17