## Richmond

## TISDALE V. COMMONWEALTH.

### March 13, 1913.

1. CRIMINAL LAW—*Indictment—Public Nuisance—Duplicity—Videlicet.*
   A warrant which charges that the defendant did unlawfully
   maintain and conduct a public nuisance, to wit: a gambling
   house, where divers persons meet for unlawful gambling, and
   did have in his possession one faro bank outfit, and unlawfully
   did keep and exhibit a gaming table, commonly called a faro
   bank, does charge a common law nuisance, and while some of
   the phrases or terms are descriptive in part, at least of a vio-
   lation of section 3615 of the Code, yet when looked at as a
   whole the indictment was intended only to charge the offense
   of a common law nuisance. On such a charge some facts must
   be alleged which show that it is an offense of that character.
   That must be taken to be the object of the enumeration of par-
   ticulars in the warrant, which was introduced by the videlicet
   for the purpose of calling attention to a more particular speci-
   fication of what had preceded, rather than to charge a separate
   offense.

2. CRIMINAL LAW—*Public Nuisance—Indictment.*—There is no statute
   in this State defining a public nuisance or declaring its con-
   stituents, or prescribing the form of an indictment therefor.
   The offense remains as defined at common law, and the indict-
   ment for its commission may be framed substantially as at
   common law, omitting many averments rendered unnecessary
   by statute.

Error to a judgment of the Corporation Court of the
city of Norfolk.

*Affirmed.*

The opinion states the case.

*R. R. Hicks,* for the plaintiff in error.

*Samuel W. Williams, Attorney-General,* for the Com-
monwealth.

BUCHANAN, J., delivered the opinion of the court.

The basis of this prosecution is a warrant issued by a police justice of the city of Norfolk, which is in the following words:

"Whereas, Sergeant Gwynn and Officer Debman has this day made complaint and information, on oath, before me, a justice of the said city, that on the 18th day of April, 1912, in said city, Herbert Tisdale did unlawfully maintain and conduct a public nuisance, to-wit: a gambling house, at No. 33 Randolph street, in violation of the law, where divers persons meet for unlawful gambling and have in his possession one faro bank outfit, and unlawfully did keep and exhibit a gaming table, commonly called a faro bank, against the peace and dignity of the Commonwealth of Virginia. These are, therefore," etc.

Upon trial before the police justice and also upon appeal to the corporation court, the accused was convicted.

No claim was made, either in the justice's court or in the corporation court, that the facts averred in the warrant did not constitute a criminal offense, but on the contrary the contention in the corporation court and here is that it charged two offenses, viz.: one for the violation of the common law in maintaining a public nuisance, and the other for violating section 3615 of the Code.

Placing that construction upon the warrant, the accused, upon the calling of the cause in the corporation court, moved that court to require the Commonwealth to elect for which of the said offenses it would prosecute. Error is assigned to the action of the court in overruling that motion.

The warrant does not seem to have been prepared with very great care, and shows less precision of expression in the description of the offense charged against the accused than is desirable in the prosecution of criminal offenses.

It undoubtedly does contain some phrases or terms descriptive, in part at least, of the statutory offense, as claimed by the accused, as well as of the common law offense of maintaining a public nuisance. This latter offense, it is apparent, we think, from the language of the warrant taken as a whole, was intended to be charged against the accused. It avers that the accused (stating time and place) did unlawfully maintain and conduct a public nuisance, to-wit. Then follows the terms or phrases which it is claimed charge another offense.

We have no statute defining a public nuisance or declaring its constituents, or prescribing the form of an indictment therefor. The offense, therefore, remains as defined at common law, and the indictment for its commission may be framed substantially as at common law, omitting many averments rendered unnecessary by statute. Code, secs. 3998, 3999 and 4000.

But it is not sufficient, it seems, in an indictment to merely aver that the accused is maintaining a public nuisance. There must be some facts alleged which show that it is an offense of that character. If the public nuisance for which the accused is prosecuted consists in keeping a gaming house, the indictment or warrant ought to contain averments of what was done in the house which gives it the offensive character and from which the public injury is deduced. 2 Bish. Cr. Pr., secs. 275-6; Wood on Nuisances, sec. 45; 3 Greenleaf on Ev., sec. 185; *Hickey* v. *State,* 53 Ala. 514.

It being necessary, or at least proper, that the warrant should contain allegations of facts and circumstances which showed that the house maintained was a public nuisance, the averments and parts of the warrant following the videlicet should be construed in the light of the averment which preceded it. The force and significance of such terms or phrases, although they may describe a different

offense, will depend in each particular instance in which
they are used upon the manner in which they are intro·
duced into the pleading and upon their connection with
other allegations.   *Com'th* v. *Hart,* 10 Gray (Mass.)
465, 467.

In the case cited it is said: "The precise and legal use
of a videlicet in every species of pleading is to enable the
pleader to isolate, to distinguish and to fix with certainty
that which was before general, and which without such
explanation might with equal propriety have applied to
different objects.  1 Chit. Cr. Law, 226."

In *Gilligan's Case,* 99 Va. 816, 823, 37 S. E. 962, 964,
it is said, quoting the definition given by Webster in his
International Dictionary, that the words "to wit" "are
used to call attention to a more particular specification of
what has preceded."

The terms and phrases which it is claimed describe the
statutory offense being pertinent and proper, even if they
were not necessary in describing the common law offense,
and being averred under a videlicet, they ought to be con-
strued, we think, as having immediate and direct reference
to the preceding averment of the maintenance of a public
nuisance, and not as charging another offense.

In the case of *Com'th* v. *Hart, supra,* it was held that
an indictment which averred that the defendants on a day
named and on divers other days and times between that
and another day, did knowingly maintain and keep a cer-
tain common nuisance, to-wit, a certain building, to-wit,
a house of ill fame and resorted to for the purpose of pros-
titution and "lewdness," and for their own lucre and gain,
certain persons, as well men as women, of evil name and
fame and of dishonest conversation, to frequent and come
together, did unlawfully and wilfully cause, permit and
procure, as well in the night as in the day, did suffer and
permit to be and remain, having illicit intercourse, was not

bad for duplicity as stating, in addition to the offense of a common nuisance under the statute, the common law offense of keeping a disorderly house.   In discussing the effect of the language following the videlicet the court said : "The common nuisance complained of is thus shown to be the keeping of a house of ill fame, contrary to the provisions of the statute; and by this explanation the general expression first used, though susceptible of a different meaning in itself, is restricted and confined to a precise and definite fact, and the accused are thereby secured against all danger of misapprehending the exact offense for which they are called upon to answer.   If there are other expressions in the indictment which are not essential to a distinct statement of the offense intended to be charged against the defendants, they may be regarded as useless and rejected as surplusage, for none of them are in, conflict with the general purpose of the prosecution or inconsistent with an accurate description of the particular offense which is complained of."

Upon a careful examination of the averments of the warrant and of the manner in which they are made, we are of opinion that the accused was not being prosecuted for two offenses, but only for the common law offense of maintaining a public nuisance, and that the said motion of the accused was properly overruled.

The action of the court in overruling the motion of the accused in arrest of judgment is also assigned as error.   As that motion was based upon the hypothesis that the warrant was a prosecution for two separate and distinct offenses, when, as we have held, it only charged one offense, the trial court did not err in overruling that motion.

The remaining assignment of error is to the refusal of the court to set aside the verdict as contrary to the evidence.

There was evidence that the house charged with being

maintained as a public nuisance was located on a street in the city of Norfolk; that at the time the police of the city made their raid upon it the accused was found in it and was the lessee thereof; that it contained four rooms and a small office, in which were found fifty-five men (all of whom were arrested), poker chips, a table known as a "crap table," a board commonly known as a "faro layout," which was so mutilated that it was impossible to use it as it then was, but there was afterwards found in one of the station cells where one of the men arrested was incarcerated a part of the covering of said faro board, which fitted into the mutilated part of the "faro layout"; and that within six months preceding the said raid men had been seen on several occasions playing cards in the house. In the absence of evidence explaining these facts and circumstances (and there are none), the jury were justified in reaching the conclusion they did; certainly it cannot be said that their verdict is without evidence to support it.

The judgment must be affirmed.

*Affirmed.*