COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Bumgardner
Argued at Richmond, Virginia


CHARLES JORDAN AND
 ELAINE JORDAN
                                            OPINION BY
v.    Record No. 0681-00-2      JUDGE RUDOLPH BUMGARDNER, III
                                          JULY 31, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Margaret P. Spencer, Judge

            Joseph E. Blackburn, Jr. (White, Blackburn &
            Conte, P.C., on briefs), for appellant.

            Steven A. Witmer, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     The trial court convicted Charles Jordan and Elaine Jordan

of maintaining a public nuisance in violation of Code § 48-3,[1]

fined them $5,000 each, and ordered them to abate the nuisance.

On appeal, they contend the evidence was insufficient to prove

they owned the premises involved.[2]  We agree and reverse.

---

[1]         Code § 48-3.  Permitting continuation of
            nuisance; presentment against premises. --
            If any such nuisance be upon premises the
            owner of which did not create or cause such
            nuisance, but permitted its continuation,
            such owner shall, for the purposes of this
            chapter, be deemed responsible for such
            nuisance, and if such owner be not a resident
            or citizen of this Commonwealth, or one whose
            residence is not known, such presentment
            shall be against the premises upon which such
            nuisance is.
[2] The defendants also contend the trial court erred in
finding that a nuisance existed and that they permitted it to

The Commonwealth received complaints that events held at The Marquee, a large banquet hall, created a public nuisance by causing increased noise from traffic, car stereos, and pedestrians yelling in the street. Cars parked illegally during the events, and garbage littered the streets after them. The Commonwealth also contended that certain events held at The Marquee violated zoning restrictions.

The Marquee is located at the corner of Cutshaw and Belmont Avenues in Richmond. Fee simple title is vested in The Marquee, L.L.C., a properly organized Virginia limited liability company. The defendants are the sole members of the company which has no employees.

Individuals and organizations leased The Marquee for the events that led to the complaints. The defendants did not promote or host the events held at the building, and the Commonwealth does not suggest they personally created or caused a nuisance. It brought the proceedings against the defendants under Code § 48-3, which makes the property owner responsible for a continuing nuisance. The Commonwealth acknowledges it must prove the defendants were the owners of the premises upon which the nuisance existed.

continue, in instructing the jury that they are responsible for the nuisances caused by patrons, in excusing certain jurors, and in ordering abatement of the nuisance. Because we find that the defendants did not own the premises, we do not address the other questions presented.

The Marquee, L.L.C. acquired fee simple title by deed of bargain and sale dated October 7, 1996. The City of Richmond issued a building permit to the limited liability company and authorized it to operate the facility as a social hall. All tax, zoning, and title records are in the name of The Marquee, L.L.C.

The Commonwealth acknowledges that title to the real estate is vested in The Marquee, L.L.C. but contends that the defendants, individually, should be deemed owners of The Marquee. The Commonwealth argues the defendants were the owners in fact because they were the sole members in the limited liability company, shared its profits, and represented themselves to be the owners.

The defendants moved to strike the Commonwealth's evidence, but the trial court ruled ownership was an issue of fact for the jury to decide. The defendants renewed their objection and moved to set aside the verdict. If reasonable men cannot differ on a finding of fact, there is nothing for the jury to resolve; the issue is one of law not of fact. Commonwealth v. McNeely, 204 Va. 218, 222, 129 S.E.2d 687, 689-90 (1963).

A limited liability company is a hybrid business organization that has characteristics of both a partnership and a corporation. It provides its owners the limited liability of a corporation, but the federal income tax treatment of a partnership. See 4B Michie's Jurisprudence, Corporations § 5,

at 93 (1999).  Organized under Chapter 12 of Title 13.1, Corporations, a limited liability company is a separate legal entity once certified by the State Corporation Commission that is empowered to sue and be sued and to acquire and hold legal or equitable title.  Code § 13.1-1009.  Title to real property acquired by the company vests in the company, Code § 13.1-1021, and a member of the company is not a proper party to a proceeding by or against the company, Code § 13.1-1020.  In this case, The Marquee, L.L.C. was an independent legal entity that held title to the real estate where the nuisance occurred.

Maintaining a public nuisance is an indictable offense. Taylor v. Commonwealth, 70 Va. (29 Gratt.) 780, 784 (1878).  It is a common law offense of ancient origin.  Public nuisance "was dealt with by the machinery established for the prosecution of crime, since no other was readily available . . . ."  Rollin M. Perkins & Ronald N. Boyce, Criminal Law 717 (3d ed. 1982).

"We have no statute defining a public nuisance or declaring its constituents, or prescribing the form of an indictment therefor.  The offense, therefore, remains as defined at common law, and the indictment for its commission may be framed substantially as at common law . . . ."  Tisdale v. Commonwealth, 114 Va. 866, 868, 77 S.E. 482, 483 (1913). "'Nuisances are of two kinds - public or common nuisances, which affect people generally, and private nuisances which may be defined as anything done to the hurt of the lands, tenements, or

hereditaments of another. . . . An indictment will lie for a public nuisance but not for a private nuisance.'" White v. Town of Culpeper, 172 Va. 630, 636, 1 S.E.2d 269, 272 (1939) (quoting John F. Dillon, 2 Commentaries on the Law of Municipal Corporations § 8 (5th ed. 1911)).

Title 48, Chapter 1 establishes the procedure by which the Commonwealth proceeds against public nuisances. It authorizes a special grand jury to investigate a complaint of nuisance made by five citizens, Code § 48-1, and to make a presentment against the person who created or caused the nuisance, Code § 48-2. Code § 48-3 makes an owner responsible for the nuisance if he allows it to continue on the premises. If the owner is not a resident or citizen, or cannot be located, the special grand jury may make a presentment against the property itself. When the proceeding against the property is in rem, anyone "interested, or for and in behalf of the owner" may defend the action. Code § 48-4.

Once a public nuisance is declared, it may be abated as part of the criminal proceedings. Code § 48-5; White v. King & M'Call, 32 Va. (5 Leigh) 726, 730 (1835). Though it is a direct action against private property that impinges upon private property rights, "[t]he abatement of such a nuisance for the public safety comes under the police power of the State, and is not a taking of private property for a public use in the sense contemplated by the Constitution, for which compensation must be

allowed."  Jeremy Improvement Co. v. Commonwealth, 106 Va. 482,

490, 56 S.E. 224, 226 (1907).  "The theory is that the owner of

an enterprise carried on for his profit by agents or servants is

liable for a nuisance . . . caused by their acts in carrying on

the enterprise."  Perkins & Boyce, Criminal Law, at 717.

When placed in its ancient common law context, Code § 48-3

can only be understood to authorize prosecution of the person or

entity that holds actual title to the property on which a

nuisance continues.  The sovereign's effort[3] to stop conduct that

creates a public nuisance can only be effective if directed at

the person with ultimate authority over the premises where the

nuisance exists.  The person who can assert the rights,

privileges, powers, and immunities of ownership to real property

is the entity vested with title in fee simple.  In this case,

The Marquee, L.L.C.

Code § 48-3 required the Commonwealth to prove the

defendants were the owners of The Marquee.  The evidence proved

---

[3] As stated in Perkins & Boyce, Criminal Law, at 897:

> The development of the public-nuisance
> concept was not in any sense a result of a
> desire to deal harshly with the offender.
> Quite the opposite, it was intended for his
> protection.  If every member of the community
> who was annoyed by a public nuisance could
> maintain an action therefor, the result would
> be disastrous to the one who had caused it.
> Hence, the theory was that the King, acting
> for all the people, would maintain one action
> which, if it resulted in a judgement against
> the defendant, would call him to pay for the
> damage done, in the form of a fine, and to
> bring an end to the nuisance under an order

conclusively that they were not.  The trial court erred in submitting the issue of ownership to the jury.  Accordingly, we reverse.

<u>Reversed.</u>

---

of abatement.