# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Jacqueline Alexander

v.

Sandra Boggs Colston,
Kickin Chicken Poultry
& Game Bird Farm, L.L.C.,
S. Colston Properties, L.L.C.,
and Farmers Friend Old Time
General Store, L.L.C.

July 2, 2015

Case No. CL14-1877

BY JUDGE STEVEN C. FRUCCI

This case is before the Court on Plaintiff's motion for default judgment against three of the four defendants. Because the individual defendant, Sandra Boggs Colston, is under a bankruptcy stay, Plaintiff moves to enter judgment against Kickin Chicken Poultry & Game Bird Farm, L.L.C., S. Colston Properties, L.L.C., and Farmers Friend Old Time General Store, L.L.C., for Fraud in the Inducement, Undue Influence, Unjust Enrichment, Constructive Trust, Resulting Trust, and Rescission. Plaintiff also alleged Breach of Loan Agreement and Breach of Investment Agreement against Defendant Colston, individually. A hearing was held on May 26, 2015.

The facts as taken from the amended complaint and transcript of the hearing follow. Plaintiff, Jacqueline Alexander, suffers from a chronic mental disability caused by a childhood accident. Plaintiff came to know Defendant Colston while working with her at Princess Anne High School in 2011. Notably, Colston worked as a Special Education teacher. In June 2012, Colston moved to Independence, Virginia, and began asking Plaintiff for money. Plaintiff would deposit money in Colston's bank account or in accounts belonging to one of the three companies Colston created as loans either to her or to the company, respectively. Money loaned to Colston

individually would be used to pay personal debts or bills, repairs and upgrades to her own car, and the like. In regards to the companies, Plaintiff also testified Colston sought money separate from her own personal needs for the benefit of the companies. These funds were used to purchase furniture and equipment, set up the company, purchase the property for the storefront, and maintain its operation. For example, in September 2013, Colston asked Plaintiff for $190,000 to invest in the general store in exchange for a partnership interest. Not until February 2014 did Plaintiff receive a letter purporting to convey a 00.01% interest in the general store for her investment. In total, Plaintiff loaned and invested $224,905.45 to Colston on behalf of the three companies without any repayment. When asked why she would make these loans, Plaintiff responded that Colston would make her feel sorry for her and feel bad for her. This continued until Plaintiff eventually ran out of money and had to live on her sister's income, at which point her sister realized what was happening and encouraged Plaintiff to file this action.

Defendants, Sandra Colston, Kickin Chicken Poultry & Game Bird Farm, L.L.C., S. Colston Properties, L.L.C., and Farmers Friend Old Time General Store, L.L.C., appeared through counsel and filed and answer and demurrer to the complaint. Plaintiff then filed an amended complaint on March 16, 2015, with the order granting leave to amend entered April 22, 2015. Pursuant to that order, Defendants were to respond by May 13, 2015, but no responsive pleadings were filed. Plaintiff then filed a motion for default judgment. Defendant Colston filed a motion to stay pursuant to a bankruptcy action, which stayed the action as against her individually but not as against any of the defendant entities she owned. Plaintiff has elected to continue pursuing the action against the business entities. In addition to rescission of the contracts and an award of damages, Plaintiff seeks an award of attorney fees pursuant to Va. Code § 8.01-221.2, although Plaintiff's expert testified the fees could not be divided between the fees required to pursue the actions against the entities and fees required to pursue the actions against Colston individually.

The particular issue before the Court is whether the actions of Defendant Colston were on behalf of the L.L.C.s in the ordinary course of their business. For the reasons set forth below, the Court finds that Colston was acting as a member of each of the L.L.C.s and proceeding in the ordinary course of its business. "A limited liability company is a hybrid business organization that has characteristics of both a partnership and a corporation. It provides its owners the limited liability of a corporation, but the federal income tax treatment of a partnership." *Jordan v. Commonwealth*, 36 Va. App. 270, 273, 549 S.E.2d 621 (2001). An L.L.C. is like "[a] corporation . . . an inanimate, artificial being, having no power to act except through living agents." *Frazier v. Virginia Military Inst.*, 81 Va. 59, 61 (1885). "Like a corporation, a limited liability company is a legal entity entirely

separate and distinct from the shareholders or members who compose it." *Mission Residential, L.L.C. v. Triple Net Props., L.L.C.*, 275 Va. 157, 161, 654 S.E.2d 888 (2008). "An act of a member, including the signing of an instrument in the limited liability company name, for apparently carrying on in the ordinary course the limited liability company business or business of the kind carried on by the limited liability company, binds the limited liability company." Va. Code § 13.1-1021.1(A)(2); see *Orthopedic & Sports Physical Therapy Associates, Inc. v. Summit Group Properties, L.L.C.*, 283 Va. 777, 785, 724 S.E.2d 718 (2012) ("If the fraud was committed in the ordinary course of the L.L.C.'s business, then fraudulent acts by one member of the L.L.C. would bind it."). Additionally, "those dealing with promoters should be left with the double security of the promoter and the company when one is formed, unless it clearly appears that the liability of the promoter was not intended, or that it was intended to be released when the liability of the corporation began." *Strause v. Richmond Woodworking Co.*, 109 Va. 724, 729, 65 S.E. 659 (1909).

In this case, the evidence is sufficient to find that Colston's acts on behalf of the companies were in the ordinary course of the business of the companies and Plaintiff may, therefore, seek default judgment against them. Colston specifically approached Plaintiff to get her to purchase the property for the general store. Separate and apart from the loans Colston sought for her personal account, Colston sought funds for the companies to deposit in their accounts or for Plaintiff to use on their behalf.

"A court of equity will not set aside a contract because it is rash, improvident or [a] hard bargain, but equity will act if the circumstances raise the inference that the contract was the result of imposition, deception, or undue influence." *Ayers v. Shaffer*, 286 Va. 212, 224, 748 S.E.2d 83 (2013). "[W]hen awarding rescission, the aim of equity is to award complete, just and equitable relief, with a view to restoring the parties to the status quo and equitably adjusting their interests under the circumstances of the case." *Devine v. Buki*, 289 Va. 162, 767 S.E.2d 459, 465 (2015). "The elements of actual fraud are: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193 (1984). Fraud in the inducement consists of "a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely." *Abi-Najm v. Concord Condominium, L.L.C.*, 280 Va. 350, 362, 699 S.E.2d 483 (2010) (internal quotation marks omitted). An action of fraud may be predicated on a promise of future performance if made with the intent not to perform. *Id.*

> [A]n action in tort for deceit and fraud may sometimes be predicated on promises which are made with a present intention not to perform them. . . . [T]he gist of fraud in such

case is not the breach of the agreement to perform, but the fraudulent intent. . . . [T]he fraudulent purposes of the promisor and his false representation of an existing intention to perform . . . is the misrepresentation of a fact. . . . [T]he state of the promisor's mind at the time he makes the promise is a fact, and . . . if he represents his state of mind . . . as being one thing when in fact his purpose is just the contrary, he misrepresents a then existing fact.

*Id.* at 362-63 (internal citations and quotation marks omitted).

"To set aside a deed or contract on the basis of undue influence requires a showing that the free agency of the contracting party has been destroyed." *Ayers*, 286 Va. at 224.

[A]lthough it is true that courts will not undertake to measure the size of people's understandings or capacities, and therefore mental weakness alone will not invalidate an instrument, yet where, as we have seen, great weakness of mind concurs with gross inadequacy of consideration, or circumstances of suspicion, the transaction will be presumed to have been brought about by undue influence, and will be set aside.

*Fishburne v. Ferguson's Heirs*, 84 Va. 87, 111, 4 S.E. 575 (1887) (internal citation omitted).

[E]xtreme weakness will raise an almost necessary presumption of imposition, even when it stops short of legal incapacity; and although a contract in the ordinary course of things, reasonably made with such a person, might be admitted to stand, yet if it should appear to be of such a nature as that such a person could not be capable of measuring its extent or importance, its reasonableness or its value, fully and fairly, it cannot be that the law is so much at variance with common sense as to uphold it.

*Id.* at 110 (internal citations and quotation marks omitted).

In this case, Plaintiff is entitled to a presumption of undue influence and has sufficiently established a claim for fraud and rescission of the contracts and repayment of her loans and money invested in each of the three entities. While Plaintiff's incapacity may not rise to the level of legal incompetency, Plaintiff has established she suffers from the continued effects of a brain injury she incurred as a child. Considering this injury and the relationship that developed between Colston and Plaintiff, it follows that the transactions Plaintiff entered into were entered under suspicious circumstances with these companies created by Colston, of which Colston was the sole owner and member. The grossly inadequate consideration of

00.01% interest in the general store in exchange for Plaintiff's investment of $190,000, given Plaintiff's great weakness of mind is further support of the findings of undue influence. Furthermore, the failure of the companies to perform their promise to return the money that was loaned to them in order to induce Plaintiff to lend the money was also fraudulent.

For this reason the Court finds that Plaintiff has established a cause of action for rescission against the defendant limited liability companies, separate and apart from Defendant Colston as an individual, on the grounds of fraud and undue influence. Plaintiff is also awarded damages of $224,905.45.

Further, the Plaintiff has met her burden in establishing that the attorney's fees in this case were reasonable and related to the claims sought, and the court hereby awards attorney's fees to Mr. William A. Lascara in the amount of $167,521.61.