COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Fulton and Ortiz
Argued at Norfolk, Virginia

PUBLISHED

MICHAEL J. MUHAMMAD, ET AL.

v.      Record No. 0813-23-1

RAMIN FATEHI

OPINION BY
JUDGE DANIEL E. ORTIZ
FEBRUARY 20, 2024

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

Peter Thos. Hansen (Amina Matheny-Willard; Peter Thos. Hansen,
P.C; Amina Matheny-Willard, PLLC, on brief), for appellants.

Ramin Fatehi, *pro se*.

When a litigant puts forth a claim not warranted by a good faith argument for the

extension of law and interposed for an improper purpose, a circuit court must impose sanctions.

This familiar principle applies to suits brought with no precedent nor factually congruent support

and those brought for political publicity.  Amina Matheny-Willard[1] appeals the imposition of a

$500 sanction for improperly filing a complaint seeking to empanel a special grand jury.  She

contends that the circuit court erred by finding the complaint was not warranted by a good faith

argument for the extension, modification, or reversal of existing law and that it was filed for an

improper purpose.  Finding no abuse of discretion by the circuit court, we affirm the imposition

of sanctions.

---

[1] The named party in this matter is Michael Muhammad, one of the enlisted plaintiffs,
however, the matter revolves around the sanctions imposed upon Matheny-Willard, who served
as representing counsel and initiator of the complaint.

BACKGROUND

Matheny-Willard and Ramin Fatehi were opponents in the 2021 City of Norfolk Commonwealth's Attorney primary election. Matheny-Willard lost the primary 60.8% to 17.8%, and Fatehi assumed office in 2022. On January 10, 2023, Matheny-Willard announced her candidacy for the 2025 Commonwealth's Attorney election on Facebook. Alongside her announcement of candidacy, she posted: "I am trying to file a document in order to hold the Commonwealth's Attorney accountable . . . I need plaintiffs . . . I only need five people." After soliciting participants in her quest to level charges against the elected Commonwealth's Attorney, Matheny-Willard, representing five Norfolk citizens, filed a complaint on January 12, 2023, seeking the empanelment of a special grand jury pursuant to Code § 48-1.[2] The complaint claimed that Fatehi was "derelict in his [prosecutorial] duties to the general detriment of the people" of Norfolk. It alleged that Fatehi failed to (1) timely disclose *Brady v. Maryland*, 373 U.S. 83 (1963), materials to defense counsel, (2) prepare adequately for trials, (3) prosecute wrongdoers competently, and (4) keep victims and witnesses informed of proceedings pursuant to Code § 19.2-11.01.

Fatehi filed a motion to dismiss for failure to state any facts alleging a public nuisance. Most relevant to this appeal, he also sought to impose sanctions as the complaint was not "well

---

[2] Code § 48-1 reads:

> When complaint is made to the circuit court of any county, or the corporation court of any city of this Commonwealth, by five or more citizens of any county, city or town, setting forth the existence of a public or common nuisance, the court, or the judge thereof in vacation, shall summon a special grand jury, in the mode provided by law, to the next term of such court, to specially investigate such complaint.

Maintaining a public nuisance is an indictable offense. *See Jordan v. Commonwealth*, 36 Va. App. 270, 274 (2001). "Once a public nuisance is declared, it may be abated as part of the criminal proceedings." *Id.* at 275.

grounded in fact," not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," and was "interposed for an[ ] improper purpose, such as to harass."

The parties presented arguments at a hearing on February 6, 2023. Four days later, the circuit court issued its order finding the complaint "merely allege[d] the existence of a public . . . nuisance," but did not, as a matter of law, "set forth the existence of one." In regard to its imposition of sanctions, the circuit court found the complaint was not warranted by existing law or a good faith argument for the extension of law and that it was filed for the improper purpose of "political publicity." The order stated that at the time Matheny-Willard presented the plaintiffs' case to the circuit court, there had been no case in American jurisprudence in which alleged maladministration by a public officer was considered a public nuisance. The circuit court further noted that to allow such an extension of public nuisance law would have the effect of opening the litigation floodgates against all public officials. Even when resolving doubts in favor of the plaintiff, the lack of any factually analogous precedent suggested Matheny-Willard's argument for the extension of existing public nuisance law was unreasonable. The circuit court granted the motion to dismiss and the request for sanctions, imposing a $500 sanction on Matheny-Willard. She now appeals the imposition of the sanction.[3]

ANALYSIS

Matheny-Willard's first and only assignment of error alleges that the circuit court erred in issuing sanctions against her because (1) a good faith reason to extend the law exists and (2) political motivation does not constitute just cause for sanctions.

---

[3] Fatehi filed a motion to dismiss Matheny-Willard's appeal alleging her assignment of error failed to comply with Rule 5A:20(c)(2). Upon consideration of the argument and review of the record, we deny the motion to dismiss.

# I. Standard of Review

"In reviewing a trial court's decision to impose a sanction pursuant to . . . Code § 8.01-271.1, we apply an abuse of discretion standard." *Shebelskie v. Brown*, 287 Va. 18, 26 (2014). "The reason for applying that standard is that we are usually confronted with a mixed question of law and fact in such cases." *Ford Motor Co. v. Benitez*, 273 Va. 242, 249 (2007). A court's imposition of sanctions will be reversed only if the "court abused its discretion in 1) its decision to sanction the litigant, or 2) in the court's choice of the particular sanction employed." *AV Auto., LLC v. Gebreyessus*, 301 Va. 321, 329 (2022) (quoting *Switzer v. Switzer*, 273 Va. 326, 331 (2007)). An abuse of discretion occurs "only 'when reasonable jurists could not differ'" as to the proper decision. *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008) (quoting *Robbins v. Robbins*, 48 Va. App. 466, 482 (2006)).

In relevant part, Code § 8.01-271.1(B) provides:

> The signature of an attorney . . . constitutes a certificate by him that (i) he has read the pleading . . . , (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass.

"Notably, the three enumerated bases for awarding sanctions under Code § 8.01-271.1 are stated in the conjunctive." *Kambis v. Considine*, 290 Va. 460, 467 (2015). As such, under the terms of the statute, an attorney makes all three representations when signing the described documents and thus the "failure to comply with any one of these statutory requirements invokes the sanctions provisions of the statute." *Id.* (quoting *Williams & Connolly, LLP v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 498, 510 (2007)); *Ford Motor Co.*, 273 Va. at 251. Code § 8.01-271.1 "provides that if this rule is violated, the court 'shall impose' an appropriate sanction upon the attorney." *N. Va. Real Est., Inc. v. Martins*, 283 Va. 86, 105 (2012) (quoting

Code § 8.01-271.1). The Supreme Court has previously noted that, "it is apparent that the General Assembly had the opportunity to make discretionary a court's imposition of sanctions upon finding a statutory violation, but elected not to do so. Instead, it used the mandatory words '*shall* impose . . . an appropriate sanction.'" *Ford Motor Co.*, 273 Va. at 249 (quoting Code § 8.01-271.1); *see also Nestler v. Scarabelli*, 77 Va. App. 440, 455 (2023) (recognizing the mandatory nature of a court's imposition of sanctions as compared to Rule 11 of the Federal Rules of Civil Procedure). Thus, the imposition of sanctions is mandatory.

"[T]o determine whether a litigant and his attorney, after reasonable inquiry, could have formed a reasonable belief that the pleading was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," we apply an "objective standard of reasonableness." *Gilmore v. Finn*, 259 Va. 448, 466 (2000). A claim's reasonableness is gauged "by the precedents existing at the time [the attorney] presented his case." *Tullidge v. Bd. of Supervisors of Augusta Cnty.*, 239 Va. 611, 614 (1990). Doubts are to be resolved in favor of the attorney's contentions. *AV Auto., LLC*, 301 Va. at 330.

### II. The complaint was not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

The complaint was not warranted by existing law. Neither Matheny-Willard, Fatehi, nor the circuit court could point to relevant controlling precedent from any U.S. court holding maladministration by a public officer to be a public nuisance. Furthermore, Virginia statutes describing the doctrine of public nuisance provide no basis for the extension to maladministration claims.[4] That leaves Matheny-Willard with one avenue under Code

---

[4] The Code contains two statutes that provide examples of public nuisances. Code § 15.2-900 states:

> The term "nuisance" includes, but is not limited to, dangerous or unhealthy substances which have escaped, spilled, been released or which have been allowed to accumulate in or on any place and all

§ 8.01-271.1(B)(ii)—the complaint must be warranted by a good faith argument for the extension or modification of existing law. The term "good faith" corresponds with its usual meaning, a "state of mind consisting in . . . honesty in belief or purpose." *Good Faith*, *Black's Law Dictionary* (11th ed. 2019); *see also Good Faith*, *Webster's Third New International Dictionary* (2002) ("[A] state of mind indicating honesty and lawfulness of purpose" or "belief in one's legal title or right."); Code § 8.1A-201(b)(20) ("'Good faith' means honesty in fact in the conduct or transaction concerned.").

Matheny-Willard alleges that—after extensive research by all parties, a hearing spanning 60 pages of transcript, and the circuit court's own thorough examination of the history of public nuisance in its order—it is unreasonable to determine that no good faith argument exists for such an extension as the issue "remains an open question." During the hearing, Matheny-Willard

---

> unsafe, dangerous, or unsanitary public or private buildings, walls, or structures which constitute a menace to the health and safety of the occupants thereof or the public. The term "responsible party" includes, but is not limited to, the owner, occupier, or possessor of the premises where the nuisance is located, the owner or agent of the owner of the material which escaped, spilled, or was released and the owner or agent of the owner who was transporting or otherwise responsible for such material and whose acts or negligence caused such public nuisance.

And Code § 15.2-1115(A) reads:

> A municipal corporation may compel the abatement or removal of all nuisances, including but not limited to the removal of weeds from private and public property and snow from sidewalks; the covering or removal of offensive, unwholesome, unsanitary or unhealthy substances allowed to accumulate in or on any place or premises; the filling in to the street level, fencing or protection by other means, of the portion of any lot adjacent to a street where the difference in level between the lot and the street constitutes a danger to life and limb; the raising or draining of grounds subject to be covered by stagnant water; and the razing or repair of all unsafe, dangerous or unsanitary public or private buildings, walls or structures which constitute a menace to the health and safety of the occupants thereof or the public.

pointed to other jurisdictions that extended public nuisance to include opioid production and the manufacture of firearms. But these types of extensions involved the manufacture of specific commercial products, drawing analogies to prior cases in which the manufacture of car alarms or gunpowder were held to be public nuisances. Moreover, in extending public nuisance law, those cases invoked statutes regulating production or use of the products whose manufacture was being challenged.

Here, there is no such analogy; rather Matheny-Willard asked the circuit court to "simply broaden[ ] [public nuisance] a little bit further to people who have special responsibilities to the public." In other words, Matheny-Willard does not point to any analogous circumstances for support; rather, she argues that the general and vague definition of nuisance allows for the inclusion of Fatehi's alleged repeated dereliction of duty as Commonwealth's Attorney.

As the circuit court below stated in its order, "[w]ere this the law any public official in Virginia might be haled into court on the complaint of five people." Even when resolving doubts in favor of the plaintiffs, the lack of any factually analogous precedent suggests Matheny-Willard's argument for the extension of existing public nuisance law to the maladministration claim is unreasonable. It is clear that, under the deferential standard we follow, the circuit court did not abuse its discretion when imposing sanctions—for Matheny-Willard could not have formed a reasonable belief that her complaint was warranted by a good faith argument for the extension of such law.

III. The complaint was filed for the improper purpose of political publicity.[5]

In connection with the determination of the frivolous nature of the complaint, the circuit court based its imposition of sanctions on its determination that Matheny-Willard filed the

---

[5] In its final order, the circuit court inextricably linked the lack of a good faith argument for the extension of existing law and the existence of an improper purpose in its conclusion to impose sanctions. Accordingly, we will address both reasons relied upon by the court.

- 7 -

complaint for the improper purpose of political publicity. The circuit court reasoned that because only two days prior to filing the complaint, Matheny-Willard announced her candidacy for Commonwealth's Attorney for 2025 and sought five people to serve as plaintiffs, the complaint was used for political advertising.

When determining whether a complaint was filed for improper purposes, courts "are guided by the purpose of Code § 8.01-271.1 as well as various policy considerations." *Kambis*, 290 Va. at 467. "Although Code § 8.01-271.1 only provides three examples of improper purposes (i.e., to harass, to cause unnecessary delay or to needlessly increase the cost of litigation) . . . this is by no means an exhaustive list." *Id.* Other recognized purposes include "protect[ing] litigants from the mental anguish and expense of frivolous assertions of unfounded factual and legal claims" as well as "protect[ing] courts against those who would abuse the judicial process." *Id.* at 467-68 (quoting *Oxenham v. Johnson*, 241 Va. 281, 286 (1991)).

On appeal, Matheny-Willard argues that political disagreement does not constitute harassment within the meaning of Code § 8.01-271.1. In her brief, she cites a plethora of historical cases to show that "[t]he use of legal action in pursuit of political advantage or viewpoint is ancient" and therefore any political motivation for her complaint does not constitute an improper purpose. During oral arguments, counsel for Matheny-Willard conceded that the facts established a political motivation behind the complaint but took issue with labeling it as an improper purpose under Code § 8.01-271.1. Counsel went so far as to argue that it is appropriate to bring criminal charges for a political purpose as "it happens all the time" and is "a part of our democracy." This, we simply cannot agree with. The court system exists to hear legitimate legal disputes, not to air political disputes and grievances. It is not acceptable for Matheny-Willard— or any other litigant—to use the judiciary to promote political agendas and file frivolous pleadings—especially in connection with criminal indictments.

In any case, the circuit court did not cite the political nature of the case in imposing sanctions; rather, it addressed Matheny-Willard's use of the court "for political advertising" for her campaign—which she acknowledged was unrelated to the underlying nuisance issue. The complaint appears to be less a "vindicat[ion] of [plantiffs'] legal rights" and more an attempt to gain political publicity by way of the judicial system. *See Kambis*, 290 Va. at 468. The solicitation of plaintiffs on social media and the publicity that stemmed from it clearly evidences an improper purpose, a conclusion reinforced by the fact that the complaint was filed just two days after Matheny-Willard's announcement of her candidacy. Considering the purpose of Code § 8.01-271.1, sanctions are reasonable to "protect courts against those who would abuse the judicial process"—as is the case here. *Oxenham*, 241 Va. at 286. Therefore, the circuit court did not abuse its discretion by imposing sanctions on Matheny-Willard because she filed the complaint for an improper purpose.

CONCLUSION

Because the complaint is not warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, and it was interposed for an improper purpose, the circuit court did not abuse its discretion in imposing sanctions against Matheny-Willard. We thus affirm the judgment of the circuit court.

*Affirmed.*