COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Fulton and White
Argued at Salem, Virginia

UNPUBLISHED

TIM DUY PHAM, ET AL.

v.        Record No. 0892-24-3

XUAN NGUYEN, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
MARCH 4, 2025

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

Wilson C. Pasley (Wilson C. Pasley, PLC, on briefs), for appellants.

Justin A. Steele (John S. Koehler; The Law Office of James Steele,
PLLC, on brief), for appellees.


Tim Duy Pham and Leanna L. Cao appeal the circuit court's order enforcing the sale of a

nail salon, DL Nails, to Xuan Nguyen and Phi Ni Thach; rescinding the related rental contract;

and awarding Nguyen and Thach $12,335.87 for unjust enrichment and attorney fees.  In seven

assignments of error, Pham and Cao argue that the evidence did not support a finding that they

sold the entire business to Nguyen and Thach, that they engaged in fraud in securing the rental

contract, or the damages award.  We affirm the circuit court's judgment regarding the contracts

but reverse its finding that Pham and Cao were jointly liable for unjust enrichment.

BACKGROUND

A.  Facts

Appellants Tim Duy Pham and Leanna Cao are ex-spouses.  Pham owned a nail salon

business called "DL Nails," whose store front had the large, printed word "NAILS" on it.  Cao

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

worked at DL Nails as a nail technician during the marriage and after the divorce. Although Cao worked there and kept some personal property in the store related to her nail work, she never owned DL Nails.

DL Nails is located in the Botetourt Commons shopping center in Daleville, Virginia. Botetourt Commons is owned by Steven Strauss, who rents out parcels of land to businesses. Strauss is the manager of Timberbrook Associates, LC, the entity that rented Pham the parcel of the Commons on which DL Nails sits. Pham's lease began in 2011 and is still in effect. The lease forbids Pham from subleasing the property without the landlord's permission.

On November 27, 2021, Cao posted an advertisement on Facebook offering to rent out DL Nails for $5,000 per month and requiring a refundable deposit of $30,000 to $35,000. Xuan Nguyen replied to Cao's advertisement via Facebook messenger because Nguyen had a friend who wanted to buy a salon.[1]

In a later conversation on November 27, Cao told Nguyen that she intended to either rent out or sell the salon. Nguyen asked for both the sale price and the rental price. After asking Pham, Cao replied that the sale price was $80,000 and the rental price was $5,000. Later, Cao messaged that Pham no longer wanted to sell the salon and would only rent it out for a five-year term at $5,000 per month. Nguyen had decided that she wanted the salon for herself rather than for her friend and told Cao that she would only buy it, not rent it.

On December 13, Cao offered to sell the salon to Nguyen for $80,000 if Nguyen also signed a five-year lease agreement with Pham. Nguyen asked whether the agreement would be with Pham or with the landlord, to which Cao replied that Pham was the landlord and that Cao pays him rent every month. Nguyen testified that this conversation caused her to believe that Cao accepted her offer to buy the salon.

---

[1] Cao had known Nguyen for ten years and had done her taxes.

Six days after accepting the offer, Cao created a "Bill of sale" dated December 19.[2] The Bill noted that Cao was "SELLER" and that Nguyen and Phi Ni Thach, Nguyen's husband, were the "BUYER." The Bill also stated:

> THE SELLER HEREBY GRANTS TRANSFER OR SALE OF THE FOLLOWING GOODS: NAI1S [sic] TO MRS. NGUYEN IN THE AMOUNT $80,000 ($5,000 deposit nonrefundable 12/19/2021 in cash money order or cashier check only).
>
> 12/26/2021 [Nguyen] will give [Cao] $35,000(cash or cashier check, money order only
>
> the $40,000 will be pay [sic] to [Cao] when transfer [sic] merchant to buyer name. WITH FOLLOWING ITEMS: [ten pedicure chairs; nine nail tables; a washer and dryer; a dryer table; two TVs; and a cashier station]
>
> . . . .
>
> The []seller's signature of the goods [above] signifies that [s]he is the lawful owner of the goods listed above, and the seller has the right to sell the goods as she chooses. After exchange of payment, the buyers render full rights and ownership of the goods listed above[.]

Cao and Nguyen signed the Bill. Pham and Thach were present when the Bill was signed.

There was also a separate "Contract for Rent DL Nail Salon" dated December 26, one week after the Bill of sale. Nguyen and Pham signed the Contract. Pham agreed to rent all "equipments, design, decorating, furnitures, exhaust system, to" Nguyen and to cover rent, lawn, and utility fees. The Contract also set the monthly rent prices for each year from 2021 to 2028. It further stated that Nguyen requires Pham's permission to "change anything of business or use the business for any loan." Nguyen was never informed that Pham was not the property's landlord.

---

[2] This document, introduced into evidence as Plaintiff's Exhibit A, was titled "Bill of sale." We refer to it in this manner going forward.

Two days later, Nguyen's husband Thach sent Cao a $75,000 cashier's check with the stated purpose of "purchas[ing] nail business." Both Cao and Pham signed the back of the check.

Nguyen testified that Cao orally agreed to reimburse Nguyen for the value of any gift cards sold prior to the Bill of sale. The total amount was $5,677, but Cao never provided any reimbursement.

Nguyen made her last rental payment to Pham for March 2023 under the Contract and then stopped paying rent to Pham because Pham was not the "real landlord."

## B. Proceedings

In August 2023, Nguyen and Thach sued Pham and Cao in circuit court. Nguyen asked the court for specific performance of the Bill of sale "purchas[ing] the entire DL Nails business"; to set aside the Contract for Rent because Nguyen already owns DL Nails and because Pham's lease with Timberbrook prohibited him from subleasing the space without Timberbrook's permission; and to order Pham and Cao to pay the value of all gift cards honored by Nguyen since the business transfer but sold prior to it. Nguyen also asked for costs and attorney fees.

At trial, Nguyen and Thach testified to their belief that they were purchasing the entire business. They did not intend to purchase the Bill's list of items only, which merely "represent[ed] what's in the business." They asserted that they believed Pham was the landlord and did not know that he was in fact a tenant who rented the space from Timberbrook.

Cao presented tax documentation showing that DL Nails was solely owned by Pham. In filing her taxes, Cao identified her own manicurist business, operated in DL Nails, as being separate from the "DL Nails" entity; her business had no name or employer ID. Cao claimed that she rented space in DL Nails after she divorced Pham in 2018. She stated that she did not have any managerial responsibilities in DL Nails but owned all the specific items of personal property listed in the Bill.

- 4 -

Cao argued at trial that the Bill's word "NAI1S" referred to specific nail goods, including fake nails, nail supplies, and nail furniture, and not to the "Nails" business. She asserted that the Bill, which she drafted, only sold her personal property, not Pham's business. Cao acknowledged some of the Facebook negotiation messages but denied making the December 13 sale offer for $80,000, alleging that "anybody" could have written the messages from her Facebook account. She also denied promising to reimburse gift cards.

On cross-examination, Cao admitted that the $75,000 cashier's check was paid into Pham's bank account. She also admitted that she had translated the Bill from English into Vietnamese for Nguyen.[3]

Cao initially denied any memory of writing the Facebook message telling Nguyen that the sale price for DL Nails was "$80k" and the rental price "5k. 3% increase per year." But, pressed by the trial court, she admitted that she wrote the message directly after that message that stated "I have just spent $100k on remodeling." She then said that, since the advertisement was "for rent," she believed that Nguyen was "jok[ing] with" her about buying the business.

Pham testified that he was only looking for nail technicians and a business manager and that he never instructed Cao to sell his business. He claimed that he told Nguyen and Thach that he was not selling the business but could not recall the date or month in which he did so, except that it took place on a Sunday. He denied being present when Nguyen and Cao signed the Bill. Pham stated that the purpose of the Contract for Rent was to allow Nguyen and Thach to "manage the shop" while Pham covered the utilities for six months. He testified to telling Nguyen that he would continue to pay the rent to the landlord but that he did not think that the Contract was a sublease.

---

[3] Nguyen and Thach used Vietnamese interpreters at the trial court hearing, but Cao did not.

Pham counterclaimed, asking the trial court to order Nguyen and Thach to pay the missed rent starting in April 2023.

The trial court determined that the word "NAI1S," though ambiguous, referred to the business and not the nail-work-related personal property. The court reached this conclusion by construing the Bill's ambiguity against its drafter, Cao, and by considering the fact that the Bill's terms exactly matched the numbers discussed in the Facebook messages between Cao and Nguyen. It did not credit Cao's denial that she wrote the messages and found that Cao had apparent authority to make the sale as Pham's agent.

Next, the trial court held the rental contract void because Pham fraudulently concealed that he was not the landlord. The court concluded that by receiving rent payments based on the misrepresentation, Pham was unjustly enriched in the amount of $7,106.87. This number comes from the difference between the higher rent paid by Nguyen to Pham and the lower rent paid by Pham to Timberbrook.

Lastly, the court held that by purchasing the business, Nguyen bought the liabilities, including outstanding gift cards, and denied reimbursement. The court also ordered Cao and Pham to pay attorney fees and trial interpreter costs. Cao and Pham appeal.

ANALYSIS

A. The Bill of Sale

The main issue in this case is whether the ambiguous term "NAI1S" in Cao's Bill of sale referred to a sale of the entire business or to a sale of only the listed personal property.[4] Pham argues that construing the Bill and Contract for Rent together as one transaction shows that Pham did not intend to sell the business. He asserts that by demonstrating his intention to rent his

_____

[4] On brief, Cao and Pham do not dispute either the finding that "NAI1S" is ambiguous or that Cao had apparent authority to negotiate the sale of the business for Pham.

assets to Nguyen, the Contract forecloses the possibility that the Bill was meant to transfer all of Pham's rights because otherwise he would not have any remaining interest to lease out to Nguyen. He also argues that the term "goods" before "NAI1S" limits the meaning of "NAI1S" to tangible assets only and excludes intangible assets like trade names or customer lists as well as liabilities. And tangible assets alone are not the "business," which includes intangible property and liabilities.

We review de novo whether a contract term is ambiguous, meaning that the term "may be understood in more than one way" based on a "fac[ial] [review] of the instrument itself." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 287 (2022) (citation omitted). Similarly, "what the terms of a contract are" and "how those terms apply to the facts of the case" are "purely legal issues" reviewed without deference to the trial court. *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 290 Va. 36, 43 (2015) (citing *Drs. Co. v. Women's Healthcare Assocs.*, 285 Va. 566, 571 (2013)). But we defer to the trial court's factual determinations and "uphold [it]s findings unless they are plainly wrong or without evidence to support them." *Davis v. Holsten*, 270 Va. 389, 397-98 (2005).

"If a written contract is so ambiguous or obscure in its terms that all contractual intention of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence . . . may be received to enable the court to make a proper interpretation of the instrument." *Georgiades v. Biggs*, 197 Va. 630, 634 (1956) (quoting 20 Am. Jur., Evidence § 1160, p. 1014). Additionally, ambiguity in a written contract "must be construed against the drafter of the agreement." *Martin & Martin v. Bradley Enters.*, 256 Va. 288, 291 (1998).

The Bill of sale's term "NAI1S" is ambiguous because it can be read to cover either the entire business or the personal property only. On the one hand, the granting clause states that the "following goods" will be sold to Nguyen, but the only noun that follows is "NAI1S," which is

not a good.  And below the granting clause, a separate clause states that "the $40,000 will be pa[id] to [Cao] when [there has been a] transfer [of the following] merchan[dise] to buyer['s] name.  With following items: [ten pedicure chairs; nine nail tables; a washer and dryer; a dryer table; two TVs; and a cashier station]."  This list of personal property is separate from the granting clause and may indicate that the granting clause was meant to cover something other than the separately listed personal property.  But on the other hand, the term "goods" used throughout the Bill may indicate that the only property being sold was movable, personal property.  Thus, a facial review of the Bill indicates that "NAI1S" may mean either the business or personal property only.

Since "NAI1S" is ambiguous, we consider the relevant extrinsic evidence.  The business advertised itself with a large, storefront sign that read "NAILS."  In messages to Nguyen, Cao wrote that she would sell the salon for $80,000.  The Bill offered "NAI1S" for $80,000, consistent with Cao's messages.  Cao and Pham both endorsed the $75,000 cashier's check that explicitly stated that the check's purpose was to "purchase [the] nail business."  Cao drafted the Bill and then translated it into Vietnamese for Nguyen.  Given the extrinsic evidence and that any ambiguity "must be construed against" Cao, the trial court correctly concluded that the Bill of sale was for the business.  *See Martin & Martin*, 256 Va. at 291.

### B.  Contract For Rent

Pham's next argument concerns the Contract for Rent.  He argues that the trial court erred in voiding the Contract for fraud, in refusing to grant Pham's counterclaim for unpaid rent, and in awarding the $7,106.87 in damages to Nguyen for unjust enrichment.

"We have long held that a contract procured by fraud is voidable at the option of the injured party.  A victim of fraudulent inducement may rescind the contract or affirm the contract and sue for damages."  *CGI Fed. Inc. v. FCi Fed., Inc.*, 295 Va. 506, 520 (2018) (citing *Wilson v.*

*Hundley*, 96 Va. 96, 100-01 (1898)).  "When a rescission occurs, 'the contract is terminated for all purposes, and the parties are restored to the status quo ante.'"  *Id.* (quoting *McLeskey v. Ocean Park Invs., Ltd.*, 242 Va. 51, 54 (1991)).

"[A] false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract."  *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 362 (2010) (alteration in original) (quoting *George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 220 Va. 109, 111-12 (1979)).

We held above that Pham sold the DL Nails business.  Having sold the business, he had no remaining interest in the property.  But Cao falsely claimed that Pham was the "landlord," leading Nguyen and Thach to believe that they had to pay Pham rent for the business.  Pham had no authority to rent a property he did not own; moreover, his lease agreement with Timberbrook did not permit him to sublease the property.  Pham's agent, Cao, fraudulently asserted that Pham owned the property, an assertion on which Nguyen relied in agreeing to the Contract for Rent.  Thus, the trial court did not err in voiding the Contract and dismissing Pham's counterclaim for unpaid rent.

Cao and Pham also argue that there was insufficient evidence presented at trial to establish $7,106.87 in unjust enrichment.  "When a rescission occurs, 'the contract is terminated for all purposes, and the parties are restored to the status quo ante.'"  *CGI Fed. Inc.*, 295 Va. at 520 (quoting *McLeskey*, 242 Va. at 54).  The evidence at trial established that Nguyen paid Pham $5,000 in rent per month for 16 months, from December 2021 through March 2023, which totaled $80,000.  In a post-trial letter, Pham conceded that, during the same period, he had paid rent to Timberbrook for that parcel totaling $72,893.13.  From the difference between these amounts, Pham profited $7,106.87.  The trial court did not err in "restor[ing the parties] to the status quo ante" by ordering Pham to repay that amount to Nguyen after voiding the Contract.

Pham and Cao next argue that only Pham is liable for that $7,106.87 because only he received the benefit. Nguyen concedes this point. We agree and therefore reverse the trial court's finding of joint liability for the $7,106.87 and remand for entry of a corrected judgment order holding Pham alone liable for that sum.

Pham's final argument alleges that the trial court erred in awarding interpreter's fees to Nguyen by erroneously holding the Bill of sale to convey the whole business and voiding the Contract for Rent. Code § 8.01-384.1:1 allows a court to assess against either party the cost of the interpreters, subject to the deferential abuse of discretion standard of review. But this argument rests on Pham's now-rejected arguments that the trial court erred in its rulings on the Bill and the Contract. Having found that those rulings were correct, we uphold the trial court's award of interpreter's fees to Nguyen.

## CONCLUSION

The trial court did not err in finding that Cao, on behalf of Pham, sold Nguyen the salon business in the Bill of sale and that Nguyen's rental contract with Pham was void for misrepresentation. But we reverse the finding of joint liability for the $7,106.87 unjust enrichment, because only Pham is liable for that amount.

*Affirmed in part, reversed in part, and remanded.*